IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CRIMINAL NO. 1:15CR124 |
| v. | ) | |
| | ) | The Honorable T.S. Ellis, III |
| MUNEEB AKHTER, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S MOTION TO REVOKE DEFENDANT'S BOND**

The United States of America, by and through undersigned counsel, hereby moves to revoke defendant Muneeb Akhter's (hereinafter "the defendant") bond. Since being placed on pretrial supervision on March 2, 2015, the defendant has been in contact with witnesses and has committed crimes, including fraud and obstructing and attempting to obstruct the government's investigation of the defendant and his coconspirators. In light of the defendant's violations of his bond conditions and in consideration of the ongoing danger to the community that he represents, the government, pursuant to 18 U.S.C. § 3142(f)(2), requests that this Court hold a hearing on May 8, 2015, and revoke the defendant's bond pending trial.

**I.    Background**

    **A.    Procedural History**

On February 27, 2015, the defendant and his brother, Sohaib Akhter, were charged in a criminal complaint with conspiracy to commit credit card fraud and were arrested. ECF Nos. 1-7. On March 2, 2015, United States Magistrate Judge Ivan D. Davis released the defendant and his brother from custody on conditions of supervision. ECF No. 13. The conditions of supervision were, *inter alia*, that the defendant not commit any crime while on release and that he

avoid contact with potential witnesses unless in the presence of counsel. *Id.* at 2. Judge Davis issued an oral instruction that the brothers, who lived together, were not to discuss the case with each other.

On April 30, 2015, a federal Grand Jury returned an Indictment charging the defendant and his brother with various crimes relating to computer hacking, fraud, identity theft, and false statements. *See* ECF No. 23. The Indictment also charged the defendant with committing a felony while on pretrial release, in violation of 18 U.S.C. § 3147(1). *Id.* at 26-27. As relevant in the context of this motion, Counts One and Two of the Indictment charged the defendant and his brother with wire fraud and hacking conspiracies related to their theft of credit card information from the website of a cosmetics company, identified in the Indictment as Victim Company 1. *Id.* at 2-11. Count Eight charged the Akhter brothers with conspiracy to hack into computer systems belonging to the U.S. Department of State. *Id.* at 15-23. Count Twelve charged the defendant with obstructing justice while on pretrial release, in violation of 18 U.S.C. §§ 1503 and 3147(1). *Id.* at 26-27.

One of the brothers' coconspirators in crimes alleged in Counts One, Two, and Eight of the Indictment is an individual identified as UCC-1. *Id.* at 2-11, 15-23. UCC-1's real name is Musaddiq Ishaq. On May 1, 2015, Ishaq pleaded guilty to a one-count criminal information charging him with conspiracy to commit credit card fraud. *See* Criminal No. 1:15CR116, ECF Nos. 20-25.

### B. Defendant's Contact with Witnesses and Obstruction of Justice

On April 3, April 7, April 9, and April 14, 2015, Musaddiq Ishaq participated in proffer sessions with government investigators. During one or more of these sessions, Ishaq revealed

that he met with the defendant on multiple occasions following the defendant's March 2, 2015, release. During these meetings, the defendant asked Ishaq to perform actions designed to obstruct the government's investigation into alleged crimes committed by the defendant, Sohaib Akhter, and Ishaq. The defendant also repeatedly attempted to contact Ishaq through third parties.

On March 2, 2015—the day that the defendant was released—Ishaq went to the defendant's house, located at 7510 Chancellor Way, Springfield, Virginia. Ishaq spoke with the defendant's mother, who told Ishaq that the defendant's lawyer instructed her that the defendant could not talk to Ishaq. After Ishaq left the house, he received a text message from the defendant telling him to wait outside. The defendant came outside and spoke with Ishaq. During that conversation, the defendant asked Ishaq to remove a computer code from the website of Victim Company 1 that was sending credit card information to nsalookup@hotmail.com, an email account controlled by the defendant and his brother.

Later that same week, Ishaq received another text message from the defendant, which directed Ishaq to meet with both the defendant and his brother Sohaib Akhter at an Islamic center in northern Virginia. While at the Islamic center, Ishaq, the defendant, and Sohaib Akhter discussed facts related to this case. During the meeting, the brothers informed Ishaq that they were not supposed to have contact with him and that they were not supposed to discuss the case with him. The defendant also rescinded his previous request that Ishaq remove the code from Victim Company 1's website and told Ishaq to leave the code in place.

During a third meeting between the defendant and Ishaq, which took place in March 2015 outside the defendant's home, the defendant showed Ishaq a typed transcript of telephone conversations between Sohaib Akhter and Ishaq and Sohaib Akhter and the defendant. Ishaq

3

believed that Sohaib Akhter had retyped the transcript from notes provided to him by his attorney. Sohaib Akhter then provided the transcript to the defendant.

In mid-March 2015, the defendant set up a fourth meeting, this time between himself, Sohaib Akher, and Ishaq, by contacting Ishaq through an online messaging program called Viber. Ishaq followed the defendant and Sohaib Akhter in his car to a northern Virginia mosque, where the three spoke outside. Sohaib Akhter patted down Ishaq and asked if he was wearing a wire. During this meeting, the Akhter brothers told Ishaq that he should hide and avoid Special Agent G.R.

On March 19, 2015, the defendant purchased an airline ticket for Ishaq to travel from Washington, DC, to the Republic of Malta. Records provided to the government by United Airlines revealed that a credit card ending in numbers 8306 was used to purchase the ticket, which cost $1,719.00. The records further showed that the credit card used to purchase the ticket was registered to "Muneeb Akhter" of "7510 Chancellor Way, Springfield, VA 22153." According to Ishaq, the defendant wanted Ishaq to leave the United States to avoid government investigators. The defendant initially offered to use a stolen credit card number to purchase Ishaq's plane ticket, but Ishaq told the defendant to use his own credit card. The defendant also drove Ishaq to the airport. At the time Ishaq left the United States on March 19, 2015, Ishaq knew that government agents had scheduled a meeting with him for the following week to talk about the investigation. Investigators and Ishaq's attorney were forced to cancel the meeting.

While Ishaq was in Malta, the defendant continued to contact Ishaq through H.T., a mutual friend. Through H.T., the defendant told Ishaq that he wanted Ishaq to stay in Malta. The

believed that Sohaib Akhter had retyped the transcript from notes provided to him by his attorney. Sohaib Akhter then provided the transcript to the defendant.

In mid-March 2015, the defendant set up a fourth meeting, this time between himself, Sohaib Akher, and Ishaq, by contacting Ishaq through an online messaging program called Viber. Ishaq followed the defendant and Sohaib Akhter in his car to a northern Virginia mosque, where the three spoke outside. Sohaib Akhter patted down Ishaq and asked if he was wearing a wire. During this meeting, the Akhter brothers told Ishaq that he should hide and avoid Special Agent G.R.

On March 19, 2015, the defendant purchased an airline ticket for Ishaq to travel from Washington, DC, to the Republic of Malta. Records provided to the government by United Airlines revealed that a credit card ending in numbers 8306 was used to purchase the ticket, which cost $1,719.00. The records further showed that the credit card used to purchase the ticket was registered to "Muneeb Akhter" of "7510 Chancellor Way, Springfield, VA 22153." According to Ishaq, the defendant wanted Ishaq to leave the United States to avoid government investigators. The defendant initially offered to use a stolen credit card number to purchase Ishaq's plane ticket, but Ishaq told the defendant to use his own credit card. The defendant also drove Ishaq to the airport. At the time Ishaq left the United States on March 19, 2015, Ishaq knew that government agents had scheduled a meeting with him for the following week to talk about the investigation. Investigators and Ishaq's attorney were forced to cancel the meeting.

While Ishaq was in Malta, the defendant continued to contact Ishaq through H.T., a mutual friend. Through H.T., the defendant told Ishaq that he wanted Ishaq to stay in Malta. The

defendant later suggested that Ishaq travel to Saudi Arabia and stay with the Akhter brothers' father, who lived there.

On March 24, 2015, the defendant sent a text message to A.I., another mutual friend of the defendant and Ishaq. The defendant texted A.I., "Yo, let mu [Ishaq] kno that all he needs to do is not tlk to feds no matter what n wait a few months n we can win this n bcom instant millionaires." The next day, the defendant texted A.I., "Yo any response from the other side."

Ishaq flew back to the United States on the evening of March 31, 2015. He was arrested at the airport.

Shortly after midnight on April 1, 2015, Ishaq received the following messages through Viber from the defendant:

Defendant: Yo

Defendant: R u with [H.T.].. hes saying hes going back.. r u going with him

Defendant: Nigga SOP [standard operating procedure] is 2 months after one arrest they make the other.. stay outta DC area or anywhere theyd think to look..other than that you should be clear

On April 3, 2015, Ishaq received the following text message from the defendant:

yo, howz ur day in prison. man [H.T.] is so gay, u guys shouldve lemme know b4. it was moose hunting season dawg. anyways find a lawyer willing to go to trial.

On April 6, 2015, the defendant sent an email to Pretrial Services Officer P.A. and copied government's counsel as a recipient. In the email, the defendant wrote, "I swear I did not have contact with codefs regarding the case post-arrest and have not broken my bond agreement."

On April 14, 2015, Ishaq reported to investigators that A.I. received a text message from the defendant requesting that A.I. arrange a meeting between Ishaq and the Akhter brothers at a mosque that evening. Ishaq told investigators that he instructed A.I. to inform the defendant that

5

Ishaq would meet the brothers as requested. However, Ishaq told investigators that he had no actual intention of attending the meeting.

A forensic examination of A.I.'s phone revealed that on the evening of April 13, 2015, the defendant asked A.I., "Is tomorrow set?" A.I. responded, "Ya." The following evening, April 14, 2015, at approximately 9:51 p.m., the defendant texted A.I., "He didnt show." A.I. responded, "Not sure y." A few hours later, on April 15, 2015, at approximately 1:50 a.m., Sohaib Akhter texted A.I., "Dude didnt show." A.I. responded, "Not sure y ...said yes."

On April 15, 2015, beginning around 12:29 p.m., the defendant and A.I. had the following exchange via text message:

Defendant: Yo set the meet for us n him

A.I.: Mentioned that and got answer ok..but not sure y didn't

Defendant: No i mean make a new meet

Defendant: Ur place

A.I: Sorry boss I dont think it will work.

### B. Additional Criminal Activity

In mid-March 2015, during the third post-release meeting between the defendant and Ishaq, the defendant told Ishaq that the Akhter brothers possessed personal passport information belonging to Department of Homeland Security Special Agent G.R. Special Agent G.R. had been investigating the Akhter brothers and Ishaq for the crimes alleged in the Indictment. During the meeting, the defendant told Ishaq that Special Agent G.R.'s information would be extremely valuable to criminals and that the defendant could either use the information himself or sell it on the "dark net." The defendant told Ishaq, "I still have [G.R.'s] stuff. If he wants to come after

6

me, I'm golden." The defendant told Ishaq that he continued to store Special Agent G.R.'s personal passport information on an external hard drive that was in the Akhter brothers' possession or control.

In April 2015, pursuant to a search warrant, federal agents gained access to the email account associated with the address credproc@hotmail.com. As alleged in the Indictment, beginning in or about April 2014, the defendant and his brother Sohaib Akhter used this email account and the account nsalookup@hotmail.com to collect credit card and personal information belonging to customers of Victim Company 1. ECF No. 23 at 10-11. An examination of the credproc@hotmail.com account revealed that, in April 2015, the account was still active. Multiple emails in the account dated in March and April 2015 were associated with rewards accounts registered to the defendant.

Three other emails, dated April 3 and April 4, 2015, were purchase confirmations from Microsoft for three video games for a total cost of $169.97. The emails began with the salutation, "Hello, [R.S.], We're sending you this message to confirm that you have purchased the following items from Microsoft: . . . ." The billing information indicated that the video games were purchased with an American Express credit card ending in numbers 1002. A federal investigator researched R.S.'s contact information and interviewed him via phone. R.S. said that he did not authorize the purchases. R.S. also stated that he had purchased items from Victim Company 1's website in the past.

## II. <u>Argument</u>

Since the defendant was placed on pretrial supervision on March 2, 2015, he has committed crimes, obstructed and attempted to obstruct justice, and threatened to retaliate against a government investigator. The defendant's conduct demonstrates that there are no conditions or combination of conditions of release that will reasonably assure the safety of the government's witnesses, its investigators, or the community. *See* 18 U.S.C. § 3142(f), (g).

The defendant is in violation of Condition 1 of his release, requiring that he shall not commit any offense in violation of federal, state, or local law. The evidence indicates that on April 3 and April 4, 2015, the defendant used credit card and personal information belonging to R.S., a former customer of Victim Company 1, to purchase video games from Microsoft. Other emails contained in the credproc@hotmail.com email account indicate that, around the time that the video game transactions were completed, the defendant was using that account to collect receipts and communications from corporate rewards programs. This evidence demonstrates that the conditions of the defendant's release were insufficient to deter him from engaging in the same conduct underlying the charges contained in the criminal complaint and in Count One of the Indictment. The defendant's continued involvement in fraudulent activity demonstrates that he is an ongoing danger to the community.

In addition, the defendant's continued possession of Special Agent G.R.'s personal passport information and suggestion that he might sell or release it on the "dark web" if the agent "come[s] after" him represents a reckless threat to retaliate against a law enforcement officer for executing his official duties. As alleged in the Indictment, Sohaib Akhter gained access to and copied Special Agent G.R.'s personal passport information while employed as a contractor at the

U.S. Department of State. *See* ECF No. 23 at 20-21. This information is highly sensitive. It includes an individual's photograph, name, date and place of birth, current address, telephone numbers, parent information, spouse's name, and emergency contact information. Simple illegal *possession* of this information is an invasion of privacy of the highest order. The defendant's additional threat to *sell or release* this information to criminals demonstrates that the defendant represents an ongoing, acute danger to both Special Agent G.R. and the entire community.

Finally, the defendant's perpetual post-release contact with coconspirator Musaddiq Ishaq, commencing the same day that the defendant was released on bond, indicates that the defendant has made no effort to comply with Condition 7(d), requiring no contact with potential witnesses. Beyond mere contact, the defendant has repeatedly attempted to disrupt the government's investigation by taking steps to keep Ishaq from federal investigators. In fact, the defendant, for a time, succeeded in interfering with the government's investigation by encouraging Ishaq to leave the United States, paying for his flight to Malta, and then suggesting he stay abroad until the case, the defendant hoped, blew over. Even after Ishaq returned to the United States, the defendant persisted in trying to meet with Ishaq and encouraged him to avoid the Washington, DC, area and federal investigators. Ishaq has also told investigators that, in the past, the defendant threatened that if Ishaq ever cooperated with law enforcement against the defendant or his brother the defendant would retaliate against Ishaq and his family. Ishaq has expressed concern about such retaliation because of the defendant's technical skill with computers and the defendant's ownership of firearms.

The defendant's conduct demonstrates that if he remains on bond he will continue to commit crimes, engage in obstruction, and tamper with government witnesses. Furthermore, in

9

light of the defendant's willingness to pay more than $1,500 to transport his coconspirator out of the country, this Court should reassess the defendant's own risk of flight. The defendant is in violation of the terms of his release. His bond should be revoked.

### III. Conclusion

The defendant is in violation of the terms of his pretrial release. His bond should be revoked pending trial.

Respectfully submitted,

_/s/_
John P. Taddei
Special Assistant United States Attorney
Jennifer A. Clarke
Special Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
john.taddei2@usdoj.gov
jennifer.clarke@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark Petrovich, Esq.
Counsel for Muneeb Akhter

                                                              /s/
John P. Taddei
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700