IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:15CR124(TSE) |
| MUNEEB AKHTER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S POSITION WITH RESPECT
TO SENTENCING FACTS AND FACTORS**

Mr. Akhter, through counsel, respectfully represents that he has reviewed the Presentence Report (PSR) and, in accordance with 18 U.S.C. § 3553(a) and the remedial scheme set forth in *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005), presents the Defendant's Position with Respect to Sentencing Facts and Factors to aid the Court in determining an appropriate sentence.

**I.   18 U.S.C. § 3553(a) Considerations**

After *United States v. Gall,* 552 U.S. 38 (2007)*,* the Sentencing Guidelines range is truly advisory.  Rejecting the government's argument that sentences significantly outside the advisory guidelines range should be subjected to exacting scrutiny on appeal, the Supreme Court in *Gall* stressed that "the Guidelines are only one of the factors to consider when imposing sentence . . . ." *Id.,* at 59.  As the Supreme Court explained, the advisory Sentencing Guidelines range is only a "starting

1

point and the initial benchmark" from which sentencing courts should begin to make their sentencing determinations. *Id.,* at 49. Pursuant to *Booker,* courts must consider the recommended guideline range as one of seven coequal statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 259-60 (2005). The Court must now consider each of the following sentencing factors:

1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

2. The Need for the Sentence Imposed

3. The Kinds of Sentences Available

4. The Sentencing Range Established under the Sentencing Guidelines

5. Pertinent Policy Statement Issued by the Sentencing Commission

6. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

7. The Need to Provide Restitution to Any Victims of the Offense.

Upon consideration of these factors, a sentencing court may find that the case falls outside the "heartland" contemplated by the Sentencing Guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States,* 551 U.S. 338, 351 (2007). While the Court must begin its analysis by correctly calculating the advisory

sentencing range, the Court is then free in light of the other statutory sentencing factors to impose an entirely different sentence.  This is because, under *Rita*, the Court is free simply to disagree, based on the § 3553(a) sentencing factors, with the Sentencing Guidelines's "rough approximation" of the appropriate sentence for any given case. *Id.,* at 350.

The primary directive of § 3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing.  After *Booker* and *Gall,* therefore, sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a).  Moreover, there is no presumption that the advisory Sentencing Guidelines range is the minimally sufficient sentence that § 3553(a) requires this Court to determine and impose.  See *Gall*, 552 U.S., at 50 (sentencing court "may not presume that the Guidelines range is reasonable.  He must make an individualized assessment based on the facts presented.") (internal citation omitted).  In *Gall,* for example, the Supreme Court found that a sentence of probation was "reasonable" in a case in which the Sentencing Guidelines called for a sentencing range of 30-37 months, and reversed the Court of Appeals for failing to "reflect the requisite deference" to the District Court's sentencing decision. *Id.,* at 56.  Indeed, whatever sentence the Court imposes after appropriately considering all the statutory sentencing factors

"whether inside, just outside, or significantly outside the Guidelines range," the Court's sentence must be reviewed by the Fourth Circuit under a "deferential abuse-of-discretion standard." *Id.*, at 51 (reversing Court of Appeals and reinstating a probationary sentence where advisory sentencing range was 30-37 months).

In *Kimbrough v. United States,* 552 U.S. 85 (2007), the Court held that a district court is free under the advisory Sentencing Guidelines to sentence outside the advisory range on the basis of a disagreement with a policy determination made by the Sentencing Commission in that case, the 100:1 sentencing disparities between "crack" and powder cocaine.  The Supreme Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." 552 U.S., at 109.  In other words, a sentencing court is free under *Kimbrough* to disagree on policy grounds with a judgment of the Sentencing Commission even when the offense at issue falls squarely within the type of cases to which the Sentencing Commission intended a particular guideline to apply.

In two recent summary reversals, moreover, the Supreme Court expressed in no uncertain terms the Sentencing Guidelines cannot be used as a substitute for a sentencing court's independent

4

determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009).

"Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson*. 555 U.S. at 352. "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Id.,* at 352. In other words, sentencing courts commit error by using a Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range. The law has come full circle. As it was before November 1, 1987, the effective date of the Sentencing Guidelines, the Court again finds itself tasked with the traditional role of judging Mr. Akhter, this unique defendant, who stands no comparison to other individuals. In this case, more than most which come before the Court, this command that the Court return to the task of judging the individual is most appropriate. As the Court has seen in the PSR and as will be argued below, Mr. Akhter presents with a very promising background filled with years of hard work and dedication that recommend a life of positive service to the community. This criminal charge portends a future that threatens this hoped for trajectory.

   1.   **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

### a.  Mr. Akhter's Cooperation with the Government

It is important to consider that Mr. Akhter has not only pled guilty to the offenses herein, since entering his plea, he has openly participated in two proffer sessions.  During these meetings, the Government, through a number of different agents, aggressively sought information about all of the activities of Mr. Akhter and his brother, indicted and otherwise, and Mr. Akhter remained calm and cooperative, and answered all the questions.  Mr. Akhter provided the Government with a significant amount of information, a significant amount of which was not known otherwise.

Additionally, while locked up in the Alexandria Adult Detention Center, Mr. Akhter became aware of useful and important information in an unrelated matter.  The information was shared with the government through Mr. Akhter's attorneys, and, upon information and belief, was acted upon.

Nonetheless, the Government has not confirmed for counsel for Mr. Akhter that they intend to file a Rule 5K Rule 35 motion.

### b.  Mr. Akhter's Advanced Professional Accomplishments and Letter of Support by Accomplished Colleague, Dan Farmer

Mr. Akhter, though still quite young, has applied himself and has accomplished much.  As a consequence, he has created the prospect of a successful life of service.  When he was only 19 years old he was graduated from George Mason University with an

6

undergraduate degree in Electrical Engineering.  Exhibit 1.  Only a year and a half later, he earned a Master of Science in Computer Engineering, with cum laude honors, also from George Mason University. In addition, Mr. Akhter has received numerous certificates related to the computer industry.  PSR, ¶ 187.

Mr. Akhter has also received numerous awards relating to "hackathons," or competitions during which the participants compete to create the best "apps" (applications).  A review of his awards, and the apps he created, displays not only his talent for creating programs on the computer, but also an altruistic side, when considering what the apps were designed to do.  His awards include:

- 2nd Place; Code for Country Hackathon; he created the Neighborhood Network Notifier (N3), which was a text-powered app using Google Maps/Google Voice to keep neighbors in touch with each other for contemplated uses like neighborhood watches and notifications.

- 1st Place; U.S. World Bank Hackathon; he created the Botswana Water-Billing Text App, which helps people in rural developing countries pay their water bills by having their number attached to their bank account through the app.

- 3rd Place; Edu Hack Day Hackathon; he created PIEDANTE (Teach Tracker), which is a website that hosts

videos of teachers teaching students for evaluation and improving techniques.

- 3rd Place; <u>Apps for Entrepreneurs Hackathon</u>; he created <u>CAPITALIST</u>, which helps entrepreneurs in the U.S. create and manage small businesses.

- 2nd Place; <u>HealthHack DC</u>; he created <u>CARE-O-LINE</u>, a text-powered app using APIs and Twilio to keep people notified about suppoting events for healthcare in their neighborhoods.

- <u>Student Winner; Nokia Ready, Set, Code</u>; he created <u>MINDSCAPE</u>, a smartphone app that allows parents to fund afterschool activities for their kids.

- 2nd Place; <u>Random Hacks of Kindness</u>; he created the <u>Nikey Clean Consumer App</u>, which helps consumers purchase more eco-friendly products by scanning products to determine the materials in the manufacturing process and how easy it is to recycle it.

- 3rd Place; <u>Microsoft Hackathon</u>; he created the <u>TRUSTPAGES app</u>, which creates digital business cards that can be transferred from one contact to another through tapping devices, or with a few presses in the app.

Further, Mr. Akhter was able to successfully compete for a contract worth $200,000, awarded by the Defense Advanced Research

Projects Agency (DARPA).  PSR, ¶ 189.  Exhibit 2.   While engaged

in this work  Mr. Akhter met and worked with Dan Farmer, a Marine

Corps veteran who served in Desert Storm, who has worked

professionally in computer science for over 25 years.  During

this time period, Mr. Farmer has been the top security architect

for four Fortune 500 companies (including the largest security

company in the world).  Further, Mr. Farmer started his own

company which rose to 50 employees, and has testified about

computer security issues before Congress.  In addition, Mr.

Farmer has appeared as an expert witness in federal courts,

written a book and numerous articles on computer security, given

many talks, classes, & seminars, and has been inducted into the

Information Systems Security Association (ISSA) Hall of Fame.

Mr. Farmer succinctly states the issue the Court confronts in

this case:

> In no fashion do I condone or agree with any of  [the
> defendant's] actions – they were foolish, reckless, and
> criminal. It might seem striking that this young
> wunderkind – the youngest-ever graduate of George Mason
> University – could possibly go so far astray. But it's
> been my personal experience in dealing with many other
> brilliant young people is [sic] that while they can be
> wizards with computers they are often stupendously
> under-socialized, live in an isolated fashion on their
> computers, and often have a muted understanding as to
> the consequences of their actions from societal and
> legal standpoints. It simply takes them longer to learn
> some things.

Letter from Dan Farmer to the Court.  Exhibit 2.  Indeed, Mr.

Akhter has much to learn.  Still, this is Mr. Akhter's first

encounter with the criminal justice system and no matter the length of sentence this Court judges to be fair, just and appropriate, Mr. Akhter will feel the impact of his decisions in this matter for many, many years to come.

### c.    Mr. Ahkter's Family Contributions and Suport

In addition to the letter referred above that was written by Dan Farmer, attached hereto are a substantial number of letters which were written in support of Mr. Akhter by people who know him well, and who are aware of the specifics of the sentencing proceedings herein.

In addition to professional colleagues and friends, attached hereto there are 13 letters written by family members of Mr. Akhter. The documents reflect not only a deep and genuine love to and from all his family members, including his many younger cousins, but also a history of continuing commitment to contribute to and help his many relatives.

Attached hereto are letters from:

Daniel Farmer (Professional Colleague; DARPA), Exhibit 3;
Saadia Qureshi (aunt), Exhibit 4;
Mohammed Aslam Khan (uncle), Exhibit 5;
Najam Akhter (father), Exhibit 6;
Sameena Parveen (aunt), Exhibit 7;
Zarina Ameen , Exhibit 8;
Usman Hamid (cousin), Exhibit 9;
Munira Akhter (sister), Exhibit 10;
Sabera Akhter (sister), Exhibit 11;
Amerah Akhter (mother), Exhibit 12;
Kauser Hamid (Aunt), Exhibit 13;
Iffat Mobin-Uddin (aunt), Exhibit 14;
Siraj Akhter (uncle), Exhibit 15;
Rana Parveen (grandmother), Exhibit 16;

> Bader Ahmed (grandmother), Exhibit 17;
> James Arcieri (professional friend), Exhibit 18;
> Pete Erickson (professional friend), Exhibit 19;
> Seif Kobrosly (professional friend), Exhibit 20.

It is useful to highlight some of the letters, and point out some thoughts and observations.  The list of attached letters includes the following.

- His <u>Aunt, Kauser Hamid</u> highlights the selfless nature of Mr. Akhter.  She notes "I have always seen [Muneeb and Sohaib] put others' needs before their own.  For example, whenever we have visited them, they allowed my kids to sleep in their rooms and beds, and they themselves slept on the carpet in the basement." - His <u>Uncle, Siraj Akhter</u>, in commenting on how well Muneeb gets along with his cousins stated "[t]hey are extremely gentle and affectionate which in turns makes their cousins adore them." Then later, he points out that "[w]hen we went to the rec center they would always help, especially with the little kids, pushing the swings and playing with them both indoor and outdoor.  When we would go out to dinner they would take care of the little kids, encouraging them to eat while keeping them entertained." Finally, and importantly, Mr. Hamid atates, based on extensive knowledge and experience, that "[M]uneeb is an extremely trusting person and unfortunately this is what has hurt him."

- His <u>Aunt, Iffat Mobin-Uddin</u>, provides a full photo documentary which includes many pictures involving family gatherings and

11

functions.  The photos are candid and heart-warming, and illustrate Mr. Akhter's background, and the mutual strong love and support his family continues to provide.

- His <u>father, Najam Akhter</u>, and his <u>mother, Amerah Akhter</u> both provided very emotional and supportive letters of support.  His father points out that "They [now] understand that they were blessed with almost everything they wanted and there was absolutely no reason for the serious mistakes committed. . . . {w]e have discussed on numerous times and they recognize that they have ample potential to do good in society and never to indulge in any illegal acts.  I can honestly say that they have taken my advice to heart.  Both Muneeb and Sohaib want to make things right for their future and are willing to do what it takes to get back on track with real life."  Also, his mother, in describing the full history of both her sons, emotionally notes that "[o]n a personal level, Your Honor, I must admit most sincerely, that it has been a blessing watching him and his brother grow up.  Often times I felt honored and grateful to God Almighty that I was blessed to be the only one to witness the wonderful things they would do."

    **2.    The Need for the Sentence Imposed**

        **A.    The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

Mr. Akhter's actions reflect a very young person who just now is entering the adult world on an emotional level.  The Court should temper its concern for the seriousness of these offenses with an appreciation of Mr. Akhter's utter failure to appreciate the seriousness of his conduct at the time he  committed these offenses.  Mr. Akhter now holds a full and robust appreciation for the seriousness of these choices which he will carry forward into his adult life.

### B.    The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

True, a period of confinement will deter in the future. More than this, however, the harm Mr. Akhter has done to his career path will surely serve as a deterrent force of equal strength.

### C.    The Need for the Sentence Imposed to Protect the Public from Further Crimes by the defendant

Mr. Akhter is in Criminal History Category I.  The Court may fairly conclude Mr. Akhter presents no danger to the community in the future. Mr. Akhter will be under supervised release, his career, already profoundly damaged by this offense, cannot survive further criminal conduct.

### D.    The Need for the Sentence Imposed to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Unlike many defendants who appear before the Court, Mr. Akhter does not need educational or vocational training, medical

care, or other correctional treatment.

### 3.   The Kinds of Sentences Available

There are not mandatory sentences in this case.  The Court is free to fashion the sentence the Court determines, in its judgment, in fair, necessary and just to accommodate the relevant sentencing factors.

### 4.   The Sentencing Range Established under the Sentencing Guidelines

#### A.   Factors and Facts in Dispute

Mr. Akhter has the following objections to the Presentence Investigation Report:

¶¶ 13, 14.  These paragraphs unnecessarily describe a domestic squabble between Muneeb Akhter and his brother, Sohaib Akhter, which are irrelevant to the charges facing Mr. Akhter. Their addition to the PSR serves only to influence the security level placement for Mr. Akhter within the BOP system and should be removed from the PSR.

¶ 109.  Mr. Akhter denies he intended to sell the agent's information on the "dark net" and already had deleted this information.

¶ 117.  The PSR incorrectly awards Muneeb Akhter an enhancement of his offense levels for his leadership role in Count One (¶ 132).  In truth, Muneeb Akhter, his brother and Musaddiq Ishaq played equal roles in the conspiracy encompassed

14

in Count One.  Each offered skills or opportunities not held by
his co-defendants.  Assuming *arguendo* Muneeb Akhter "initiated
the instant scheme," that does not mean he was a leader or
organizer of the scheme once it was embraced by all co-
conspirators.

¶ 121.  Mr. Akhter objects to the PSR's position that Mr.
Akhter is subject to an enhancement on the grounds he deleted
information from his computer. U.S.S.G. § 3C1.1 provides:

> If (1) the defendant willfully obstructed or impeded,
> or attempted to obstruct or impede, the administration
> of justice **with respect to the investigation,**
> **prosecution, or sentencing of the instant offense of**
> **conviction**, and (2) the obstructive conduct related to
> (A) the defendant's offense of conviction and any
> relevant conduct; or (B) a closely related offense,
> increase the offense level by two levels. (Emphasis
> provided).

The search warrant referred to in this paragraph was issued by a
state judicial officer and was not necessarily "with respect to
the investigation, prosecution, or sentencing of the instant
offense of conviction."

¶ 123.  Mr. Akhter merits the three level reduction for
acceptance of responsibility.  Application Note 4, U.S.S.G. §
3E1.1 addresses instances of obstructive behavior *following* a
plea agreement.  The PSR cites to conduct *before* Mr. Akhter
finally entered his guilty plea.  The logic of the PSR denies
acceptance of responsibility to all defendants who have ever
attempted to thwart an investigation.  The PSR invites the

Court's attention to *United States v. Knight*, 606 F.3d 171, 176 (4th Cir, 2010). In *Knight* the Fourth Circuit noted that this Circuit rejects the application of a bright-line rule that an acceptance-of-responsibility reduction should be applied so long as Mr. Akhter does not obstruct justice after agreeing to plead guilty. Instead, the *Knight* directs district courts to decide whether to award this reduction on a case-by-case basis. This case recommends the award of this reduction. Mr. Akhter is very young. He has no prior criminal history. As observed by Dan Farmer, in his letter of support referenced above, Mr. Akhter is stupendously under-socialized. His choices obstructed justice. There is no dispute with this. Mr. Akhter, however, has fully embraced his responsibility for his actions and reveals true remorse for his choices in this case.

### OFFENSE LEVEL CALCULATIONS

**Counts One & Two**

¶ 134. As noted above, Mr. Akhter does not merit this two level offense level increase for a role as the leader or organizer.

¶ 136.   The final adjusted offense level is 22.

**Count Seven**

Count Seven is grouped separately. All counts of conviction should be grouped together.

¶ 138. Pursuant to the FedMine price list, the data

accessed by Mr. Akhter was valued at approximately $5,000 to $6,500.  The PSR should award only two offense levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(B).

¶ 140.  The PSR awards two offense levels because Mr. Akhter used a special skill.  This increase in improper.  All skills are special to the people who possess these skills.  These skills are not special to those who work in the same field.  By this logic, every loan officer faces this enhancement in a mortgage fraud prosecution; every drug dealer faces this enhancement in a drug trafficking conspiracy.

¶ 142.  Accordingly, the adjusted offense level for Count Seven is 8 not 12.

**Count Eight**

¶ 148.  The PSR awards two offense levels because Mr. Akhter used a special skill.  This increase in improper.  All skills are special to the people who possess these skills.  These skills are not special to those who work in the same field.  By this logic, every loan officer faces this enhancement in a mortgage fraud prosecution; every drug dealer faces this enhancement in a drug trafficking conspiracy.

¶ 150.  Accordingly, the adjusted offense level for Count Eight is 13, not 15.

**Multiple Count Adjustment:**

¶ 163.  Count 12 should be grouped with Counts 1 & 2,

pursuant to U.S.S.G § 3D1.2 (c), which provides:

> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

The obstruction described in Count 12 was considered in the PSR at ¶ 135 and two offense levels were added to the offense level calculations for Counts 1 & 2 for the obstruction described in Count 12.

Alternatively, all counts group together pursuant to U.S.S.G § 3D1.2 (d) because all offenses are continuous in nature:

> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Consequently, there is no increase in the offense level from 24 to 25 in this paragraph.

¶ 165.  Mr. Akhter objects to the addition of any offense levels based on grouping of counts.

¶ 166.  The greatest offense level is for Count 1 and 2, at 22.

¶ 168.  Mr. Akhter is entitled to acceptance of responsibility.

¶ 169.  The total offense level is 22, with the award of a three level reduction for acceptance of responsibility, the adjusted offense level drops to 19.

18

¶ 197.  The adjusted offense level should be 19. In Criminal History Category I Mr. Akhter faces a recommended sentencing range of 30-37 months.

**5.  Pertinent Policy Statement Issued by the Sentencing Commission**

None.

**6.  The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

Musaddiq Ishaq (Docket No. 1:15CR00116-001) was sentenced by the Court on May 1, 2015.  Though the disposition is underseal, the first version of the PSR inadvertently revealed this disposition.  PSR, 10.  As asserted above, Mr. Akhter does not merit the role enhancement awarded by the PSR.  Mr. Akhter, his brother Sohaib Akhter and Musaddiq Ishaq were co-equals and their sentences should be harmonized. Indeed, defendant Ishaq arguably abused his relationship with his mother at the outset of this offense to insinuate himself and the co-defendants into a position of trust with Shea Terra.

**CONCLUSION**

It appears likely that the Government will not file a motion under Fed. R. Crim. P. 35.  The sentence the Court imposes will be the final sentence.  Mr. Akhter, by counsel, respectfully asks that the Court consider the sentence imposed on Musaddiq Ishaq as a benchmark for the sentence in this case.

Mr. Akhter further asks that the Court consider releasing

him with conditions so that he will be able to self-surrender to

the facility designated by the Bureau of Prisons.

Respectfully submitted,

Muneeb Akhter
By Counsel

**ECF FILING:**


 /s/
Joseph J. McCarthy
VA Bar # 19006
Counsel for Defendant
Delaney, McCarthy & Colton, P.C.
510 King Street, Suite 400
Alexandria, Virginia  22314
Telephone: (703) 549-9701
Facsimile: (703) 836-4285
E-mail: mccarthy@lawdmc.com


Mark Petrovich
Petrovich & Walsh, P.L.C.
10605 Judicial Drive, Suite A-5
Fairfax, Virginia  22030
703-934-9191 - o
703-934-1004 - f
mp@pw-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

/s/
Joseph J. McCarthy
VA Bar # 19006
Counsel for Defendant
Delaney, McCarthy & Colton, P.C.
510 King Street, Suite 400
Alexandria, Virginia  22314
Telephone: (703) 549-9701
Facsimile: (703) 836-4285
E-mail: mccarthy@lawdmc.com