IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,        )
                                 )
                    Plaintiff,   )
                                 )
v.                               ) CRIMINAL ACTION
                                 )
MUNEEB AKHTER,                   ) 1:15-cr-124
                                 )
                    Defendant.   )
_____)

REPORTER'S TRANSCRIPT

<u>SENTENCING HEARING</u>

October 2, 2015

---

<u>BEFORE</u>:       THE HONORABLE T.S. ELLIS, III
               Presiding

<u>APPEARANCES</u>:  JOHN TADDEI, AUSA
               JENNIFER CLARKE, AUSA
               KELLEN DWYER, AUSA
               United States Attorney's Office
               2100 Jamieson Ave.
               Alexandria, VA 22314

                  For the Government

               JOSEPH J. MCCARTHY, ESQ.
               Delaney McCarthy & Colton, PC
               510 King St., Suite 400
               Alexandria, VA 22314


                     ---


            MICHAEL A. RODRIQUEZ, RPR/CM/RMR
                 Official Court Reporter
             USDC, Eastern District of Virginia
                  Alexandria, Virginia

1    APPEARANCES (Continued)

2

3                    MARK J. PETROVICH, ESQ.
                     Petrovich & Walsh, PLC
4                    10605 Judicial Drive, Suite A-5
                     Fairfax, VA 22030
5
                        For the Defendant
6

7                           ---

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>INDEX</u>

RECAPITULATION BY THE COURT                        6

OBJECTIONS/CORRECTIONS TO PRESENTENCE REPORT      12

ALLOCUTION BY THE DEFENDANT                       51

ALLOCUTION ON BEHALF OF THE DEFENDANT             53

ALLOCUTION BY THE GOVERNMENT                      57

IMPOSITION OF SENTENCE BY THE COURT               64

(Court adjourned)


---

<u>PROCEEDINGS</u>

1
2
3          (Court called to order at 11:54 a.m. in USA
4    v. Muneeb Akhter.)
5          THE COURT:  United States versus Muneeb
6    Akhter, Criminal Case Number 1:15-cr-124.
7          Counsel please note your appearance for the
8    record.
9          ATTORNEY TADDEI:  Good morning, your Honor.
10   John Taddei, Jennifer Clarke and Kellen Dwyer for the
11   United States.
12         ATTORNEY CLARKE:  Good morning, your Honor.
13         THE COURT:  Good morning to you all.
14         Mr. McCarthy, good morning to you.
15         And the record will reflect that the
16   defendant is now present in the courtroom in the
17   marshal's custody.
18         Let me ask, is the counsel for Sohaib Akhter
19   in the courtroom?
20         ATTORNEY ABBAS:  Yes, your Honor.
21         THE COURT:  What's the problem with going
22   ahead at 1:00 o'clock?
23         ATTORNEY ABBAS:  I have not had a chance yet
24   to speak with all the individuals involved.
25         THE COURT:  I don't hear testimony for

1    sentencings.  You understand that.

2                    ATTORNEY ABBAS:  If that's your Honor's

3    wish, then obviously we will follow that.

4                    THE COURT:  Mr. McCarthy, you've got some

5    gray hair.  How long have you been here?

6                    ATTORNEY MCCARTHY:  A few weeks, your Honor.

7                    THE COURT:  Measured in powers of ten?

8                    ATTORNEY MCCARTHY:  Measured in many powers

9    of ten.

10                   THE COURT:  And in your experience, have you

11   presented witnesses in sentencings?  How often?

12                   ATTORNEY MCCARTHY:  I have not, your Honor.

13                   THE COURT:  If there is some really --

14   something significant that I have to hear as a matter of

15   testimony, rather than submitting letters or something,

16   I'll consider it.  But I typically do not hear any

17   testimony, unless there is some disputed fact that has

18   to be resolved by testimony.

19                   ATTORNEY ABBAS:  I understand that, your

20   Honor.  And I understand that the testimony of,

21   especially a character-based witness is not typical in

22   sentencing.  But I do think that a brief testimony from

23   a single witness might provide the Court --

24                   THE COURT:  I'll let you make a proffer, but

25   I probably won't hear the testimony.

1          ATTORNEY ABBAS:  Yes, Your Honor.

2          THE COURT:  But be here at 1:00 o'clock

3     then.  Is there any reason you can't be here at

4     1:00 o'clock?

5          ATTORNEY ABBAS:  Well, I am here now, and we

6     will be here at 1:00 o'clock, yes, your Honor.

7          THE COURT:  All right.  I would like to go

8     ahead then, if I can.

9               RECAPITULATION BY THE COURT

10          THE COURT:  All right.  This matter is

11     before the court for sentencing, this defendant having

12     been found guilty on the basis of pleas to a number of

13     counts of the indictment, including six counts of a

14     12-count indictment:  Count 1, conspiracy to commit wire

15     fraud; Count 2, conspiracy to access a protected

16     computer without authorization; Count 7, access to a

17     protected computer without authorization; Count 8,

18     conspiracy to access a government computer without

19     authorization; Count 10, false statements; and Count 12,

20     obstruction of justice.

21          Now, the record reflects the following

22     conduct.  There is really a good deal of it.

23          This defendant is the twin brother of a

24     codefendant.  He was hired by FedMine, which is Victim

25     Company Number 2 in the court documents.  It's a data

1    aggregation company.  They aggregate data regarding

2    Federal Government contracts.

3             In November 2013, the end of November, this

4    defendant e-mailed his brother to tell him he had

5    modified one of the owner's past login accounts and that

6    he had created several new login accounts and passwords,

7    giving him back-end access to the company's computer

8    systems.

9             And then in November 2013 to February 2014,

10   he engaged in unauthorized access of FedMine's computer

11   system.  That's Count 7 of the indictment.

12            Then in February of 2014, he inserted codes

13   into FedMine's computer systems, causing the systems

14   to -- this is really not that relevant -- to vote for

15   Muneeb in an online contest and send mass e-mails to

16   students at George Mason.

17            He ended up, I think, Mr. Taddei,

18   apologizing to the company for that.

19            ATTORNEY TADDEI:  In part, your Honor; but

20   he also made a veiled threat to the victim of --

21            THE COURT:  Yes, I recall that.  But in any

22   event, we go on.

23            On March 2014 to April of 2015, during that

24   period, this defendant and his twin brother and another

25   defendant, Ishak, a coconspirator, engaged in a

1    conspiracy to gain unauthorized access to Ishak's

2    mother's company, Leshay Terra (phonetics) -- That's

3    Victim Company Number 1 in the Court documents -- to

4    gain access to credit card number of its customers.

5    That's Counts 1 and 2 of the indictment.

6            And Muneeb, this defendant, secretly

7    installed a computer code onto the computer system of

8    this Victim Company Number 1, and this code

9    automatically e-mailed the credit card numbers and means

10   of identification of victims to e-mail accounts

11   controlled by he and his coconspirators.  That's in

12   Counts 1 through 6, but it's Counts 1 and 2 that he has

13   pled to.  But it's part of the related conduct.

14           Then in June of 2014, he provided a sworn

15   statement to the Department of Homeland Security that he

16   had created a computer code to gain unauthorized access

17   to several websites that allowed him to reload gift

18   cards with actual money.

19           This was a false statement; appears to have

20   been an attempt to cover up stealing of credit card

21   information from Victim Company Number 1.  That's

22   involved in Count 9 of the indictment.

23           A reporter, in mid-July of 2014, told this

24   defendant of an unexecuted state search warrant for

25   their home residence, and this defendant and his brother

1      erased the contents of their computer.

2              That was obstruction of justice enhancement

3      for Counts 1 and 2, which we will come to.  There is an

4      objection to that.

5              The federal search warrant was executed at

6      the residence, and the defendant e-mailed the agents and

7      said they would be disappointed with the raid results,

8      and he had wiped the data prior to the warrant being

9      executed.

10             In October of 2014, this defendant made

11     false statements on a questionnaire for national

12     security positions, while maintaining employment with

13     Booz-Allen.

14             He said that in the past seven years he had

15     not illegally and without proper authorization accessed

16     any information technology system or introduced any

17     programs onto computer systems without authorization

18     when, in fact, he had done so with Victim Company

19     Number 1 and with Victim Company Number 2.  That's Count

20     10 of the indictment.

21             Then in October of 2014 to February of 2015,

22     this defendant's brother was hired as a contract

23     employee with Accionet (phonetics) and assigned a

24     position at the State Department.

25             And this defendant's brother engaged in

1    unauthorized access of the State Department's lock-box

2    database, and he conducted approximately 119 searches

3    for passport records, including the information of a

4    special agent investigating him and his brother.

5            Then in February of 2015, his twin brother

6    surreptitiously installed malicious programs onto State

7    Department computer systems in an attempt to create at

8    least one back-door login account.  He also downloaded

9    several programs to a State Department computer in the

10   hopes of gaining remote access to State Department

11   computers.

12           In February 2015, on February 15th, they

13   attempted to install a Gumstix -- the three

14   conspirators, Sohaib, Muneeb and Ishak -- at a State

15   Department facility, which would have allowed them to

16   gain remote access.  But the attempt was unsuccessful,

17   ultimately.

18           In February of 2015 -- I beg your pardon.

19           In March of 2015, this defendant and his

20   brother were arrested and released on bond with the

21   condition that they have no contact with the alleged

22   victims or potential witnesses.

23           And in March, he had -- this defendant had

24   at least four meetings with Ishak and Sohaib.  Sohaib

25   was present at two of them.

1          During one meeting with Ishak, which

2     occurred outside of Muneeb's residence, Muneeb said that

3     he still had the photograph, Social Security number,

4     phone number, address and other personal information for

5     the case agent.

6          Then in March, Muneeb drove Ishak to Dulles

7     Airport, purchased him a ticket to Malta, all this in an

8     effort to avoid having Ishak subject to questioning by

9     the police.  And that's Count 12 of the indictment.

10          Muneeb sent a text message to a mutual

11     friend and Ishak's, advising the friend to tell Ishak

12     not to talk to federal agents.  That's March 24th.

13          April 1st, Ishak returned to the United

14     States, and this defendant sent him a text telling him

15     to stay out of the D.C. area or any place -- or any

16     place else that law enforcement agents would look for

17     him.

18          And he also searched for things like

19     "breaking bond agreement" on his home computer.

20          And ultimately, I revoked his bond.

21          He also, on April 6th, 2015, he e-mailed the

22     probation officer, saying that, "As a neutral party, I

23     would urge you to refrain from contacting the

24     prosecution on activity you deem concerning before first

25     giving my attorney and me a chance to explain."

1          He said, "I swear I did not have contact

2     with codefendants regarding the case postarrest and have

3     not broken my bond agreement."

4          Well, of course, that was not true.

5          Now, one other fact I think is worth

6     mentioning is that while this defendant was an inmate at

7     the Alexandria Detention Center, he attempted to install

8     a program on the computers at the law library.  This

9     program would have served as a message bored allowing

10    inmates to post messages to an offline local forum.  He

11    got a sanction within the detention center for that.

12         That's a very brief summary of the offense

13    conduct involved.

14         OBJECTIONS/CORRECTIONS TO PRESENTENCE REPORT

15         THE COURT:  Let me ask, first of all,

16    Mr. McCarthy, have you had an adequate opportunity to

17    review the presentence report and to review it with your

18    client?

19         ATTORNEY MCCARTHY:  Yes, your Honor.

20         THE COURT:  Mr. Akhter, have you had an

21    opportunity to review the presentence report and to

22    review it with your counsel, Mr. McCarthy?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  And are you fully satisfied with

25    the advice and counsel he has provided to you in this

```
 1    case?
 2                THE DEFENDANT:  Yes.
 3                THE COURT:  All right.  You may be seated.
 4                THE DEFENDANT:  (Complies.)
 5                THE COURT:  Now, Mr. McCarthy, I know you
 6    have a number of objections.  I'll come to those in a
 7    minute.  But let me deal with the government.
 8                Does the government have any remaining
 9    objections?
10                Originally the government objected to
11    sophisticated means or special skill.  You wanted both
12    of them applied.
13                ATTORNEY TADDEI:  Well, your Honor, the
14    government believes that a sophisticated means
15    enhancement is appropriate.  The defendant actually did
16    not receive an enhancement for use of a special skill
17    for Count Group 1, which seemed to be the reasoning
18    employed by the Probation Office as to why it didn't
19    also issue a sophisticated means enhancement.
20                The government maintains that a
21    sophisticated means enhancement is appropriate, given
22    Mr. Akhter's conduct, particularly with respect to the
23    fraud side of things.
24                The way that this fraud was carried out was
25    by first installing a key logger onto the victim's
```

1     computer system, then installing various different

2     codes, including one that was specifically designed to

3     evade detection.  That was, in fact, successful, as the

4     code wasn't discovered for almost a year, during which

5     time e-mail accounts that the defendant had set up

6     continued to collect credit card information.

7             This was, in our view, certainly more

8     sophisticated than the garden variety fraud offense, and

9     the government maintains that that is --

10            THE COURT:  Is it your view that special

11    skill under 3B1.3 should be applied?

12            ATTORNEY TADDEI:  Well, your Honor, I

13    believe that there is a conflict within the guidelines

14    themselves.  I think the use of the special skill --

15            THE COURT:  What is the answer to my

16    question?

17            ATTORNEY TADDEI:  Your Honor, I do believe

18    that if it was able to be applied, that it would be

19    appropriate to be applied in this case.

20            THE COURT:  Why isn't it able to be applied?

21            ATTORNEY TADDEI:  I believe there is a

22    conflict between use of a special skill and receiving

23    enhancement for, I think it's a leadership position.

24            THE COURT:  Yes, there is.

25            ATTORNEY TADDEI:  Yes, your Honor.

 1          THE COURT:  But put that to one side.

 2          ATTORNEY TADDEI:  Yes.

 3          THE COURT:  Let's suppose he doesn't get a

 4    leadership position.  Then wouldn't the special skill

 5    apply in this case?

 6          ATTORNEY TADDEI:  Well, yes, your Honor.

 7    Then in that situation the government would maintain

 8    that both enhancements would be appropriate.  Not only

 9    did the defendant use special skills to execute this, he

10    also did -- he also performed this criminal conduct in

11    such a way that the means that the offenses were carried

12    out were sophisticated.

13          Simply because someone --

14          THE COURT:  There are cases that hold that

15    both of them can apply.

16          ATTORNEY TADDEI:  That's correct, your

17    Honor.

18          THE COURT:  So your objection, then, is with

19    respect to the guidelines, that if a role enhancement

20    does not apply, then he should receive a 2B1.1(b)(10)(C)

21    enhancement --

22          ATTORNEY TADDEI:  That's correct, your

23    Honor.

24          THE COURT:  -- for sophisticated means.

25          ATTORNEY TADDEI:  In addition to --

1          THE COURT:  All right.  That's an objection

2     you have, and we will come back to that.

3          Thank you.

4          ATTORNEY TADDEI:  Yes, your Honor.

5          THE COURT:  We'll come back to that.

6          Now let's go back to yours, Mr. McCarthy.

7     The first one you raised was on paragraphs 13 and 14,

8     which describe a domestic squabble between the defendant

9     and his brother, and you argue those are irrelevant to

10    the charges; is that right?

11         ATTORNEY MCCARTHY:  Yes, your Honor.

12         THE COURT:  I agree that they are irrelevant

13    to the Court's sentencing decision, but I am not going

14    to strike those from the presentence report because I

15    think it's information that the Bureau of Prisons and

16    the supervising officer might profit from.  But it

17    doesn't affect my sentencing decision and it isn't -- it

18    doesn't affect the guidelines.

19         ATTORNEY MCCARTHY:  Very good, your Honor.

20         THE COURT:  Now the second one,

21    Mr. McCarthy, is that -- paragraph 109, where the

22    probation officer indicated that he had talked to -- or

23    he was talking to somebody on the Darknet about the case

24    agent's information.

25         And you deny -- you say your client denies

1    that he intended to sell the case agent's information.

2    Is that right?

3              ATTORNEY MCCARTHY:  That's correct, your

4    Honor.

5              THE COURT:  Well, the answer to that is, I

6    don't read paragraph 109 as saying that he intended to

7    sell it.

8              But what I am going to do is to require the

9    probation officer to add to paragraph 109 the statement

10   that:  The defendant denies that he intended to sell

11   this information.

12             Now, I think what we do have in the record

13   is that Ishak told -- or said that the defendant told

14   him -- that is, that Muneeb told him that the

15   information would be extremely valuable to criminals,

16   and that he could either use the information himself or

17   sell it on the Darknet.

18             I don't think there is any doubt that that's

19   what Ishak said.

20             Now, you can certainly argue that I

21   shouldn't accept what Ishak said as true.  But in any

22   event, it doesn't affect the guidelines calculation.

23   And I am adding to paragraph 109 his denial that he

24   intended to sell it.  And I think that takes care of

25   that objection.

1           ATTORNEY MCCARTHY:  It does.  Thank you,

2      your Honor.

3           THE COURT:  Next, we have the -- there was a

4      restitution problem, but I think that's been resolved in

5      your favor, I think, Mr. McCarthy, in your client's

6      favor.

7           Initially, the probation officer recommended

8      that the defendant pay restitution totaling 13,950 to

9      Federal Mine or FedMine.

10          And you objected, and the probation officer

11     agreed that that was more of an intended loss than an

12     actual loss.  And so as of the time of the presentence

13     report, Federal Mine has not advised the probation

14     officer of any actual loss.

15          So the restitution should be how much now?

16          ATTORNEY TADDEI:  Your Honor, we have an

17     order prepared for entry, restitution amount of

18     $31,375 --

19          THE COURT:  And it doesn't include the

20     Federal Mine stuff.

21          ATTORNEY TADDEI:  That's correct, your

22     Honor.  It does not.

23          THE COURT:  So that objection ultimately you

24     prevailed on, Mr. McCarthy.

25          Then we come to role in the offense.  And

1  here, the defense counsel, you, Mr. McCarthy, object to

2  the defendant being assessed a two-level enhancement for

3  playing an aggravating role in the offense.

4  I have looked at some of the telephone

5  conversations and other things, and -- go ahead and tell

6  me what your position is, briefly, Mr. McCarthy, on

7  this.

8  ATTORNEY MCCARTHY:  When the defendant and

9  his brother were together -- they parted company when

10  his brother went to Richmond to go to Virginia

11  Commonwealth University for grad school.

12  It was at that point in time when Muneeb

13  Akhter, the defendant here, encountered

14  Mosivek (phonetics) Ishak.  Mosivek Ishak had the

15  relationship with his mother's business, Shay Terra, the

16  online retail store for cosmetics.

17  It was at that point in time when, it's our

18  assertion, that the brainstorm to do this came from

19  Mosivek Ishak, figuring out how he could use Muneeb

20  Akhter to facilitate penetration of the computer to

21  access these credit card numbers -- not to diminish what

22  Muneeb Akhter himself did.

23  But I think as the Court can see from many

24  episodes in Muneeb Akhter's life, he is extremely

25  vulnerable to suggestion and to following the --

1          THE COURT:  Who is amenable to suggestion?

2          ATTORNEY MCCARTHY:  Muneeb Akhter is

3    extremely amenable to suggestion and to --

4          THE COURT:  Really?

5          ATTORNEY MCCARTHY:  It's been our

6    experience, looking at this case, from his paying of

7    tuition to college classmates, to, frankly, assisting

8    Ishak --

9          THE COURT:  You've read these transcripts.

10         ATTORNEY MCCARTHY:  I have, your Honor.  I

11   understand what the Court is saying.

12         THE COURT:  He doesn't strike me as a person

13   who is led around by the ring in his nose.

14         ATTORNEY MCCARTHY:  What I mean to suggest

15   to the Court is, the genesis of the idea --

16         THE COURT:  All right.

17         ATTORNEY MCCARTHY:  -- doesn't flow entirely

18   from this gentleman.

19         Undoubtedly, he had the skill-sets that

20   Mosivek Ishak did not have.  And I think what we are

21   doing is conflating the ability to actually implement an

22   idea with the headwaters of the idea.

23         THE COURT:  All right.

24         ATTORNEY MCCARTHY:  That's the point we are

25   trying to make to the Court.

1          THE COURT:  Mr. Taddei, what's your view on

2     the enhancement for role in the offense?

3          ATTORNEY TADDEI:  Well, your Honor, I think

4     one particular thing is important to know, and it is not

5     that Mosivek Ishak was the genesis of this fraud and

6     hacking conspiracy of Victim Company 1.

7          If I could turn your Honor's attention to

8     PSR paragraph 36, which parrots paragraph 17 of the

9     statement of facts signed and sworn by Muneeb Akhter,

10    the genesis of this hacking and fraud conspiracy came

11    when Muneeb Akhter communicated with a coconspirator on

12    the dark web and tried to gain access into a hacker

13    collective.

14         After that, Muneeb was the one who went in

15    and modified codes on Victim Company 1's computer,

16    himself, without the assistance of Ishak or his brother.

17    And it was only at that point, once he decided that this

18    would be a good way to gain credit card information and

19    use it, that he pulled in Mr. Ishak and his brother.

20         So the genesis and really the conspiracy

21    does not occur if Mr. Akhter does not work with this

22    Darknet coconspirator to first install codes and then to

23    bring in his brother and Ishak to set up actual e-mail

24    accounts, which Muneeb Akhter controlled, to collect

25    this credit card information, and then he himself was

1    the one who tested the success of this conspiracy by

2    flying out to California using the credit card

3    information.

4           So he was certainly the hub of this fraud

5    and hacking conspiracy, and as a result we believe the

6    two-point enhancement is appropriate, your Honor.

7           THE COURT:  All right.

8           Let's -- I am going to reserve on that for a

9    moment, because it runs into conflict with the use of a

10   special skill.  And let's go to that now.

11          Mr. McCarthy, you object to paragraphs 118,

12   140, 148, the use of a special skill.  You make an

13   argument -- I am not sure I understand it.  You say that

14   all skills are special to the people who possess them.

15          Well, that's true, but I don't know what

16   that answers.  You know, a neurosurgeon has skills that

17   are peculiar to neurosurgeons.  That doesn't make them

18   not special skills.

19          ATTORNEY MCCARTHY:  No, it doesn't make them

20   normal skills.  But what I am trying to help the Court

21   reach is the conclusion that this behavior has to be

22   viewed in the context of other offenses of similar

23   nature.

24          Some skills -- some offenses by definition

25   do require extraordinary kills.  But what we are trying

1    to do is compare the behavior of this defendant in this

2    offense with other defendants committing a similar

3    offense, not with other defendants committing a breaking

4    and entering.

5              In that --

6              THE COURT:  Really?  Where do you get any

7    support for that?

8              That's like saying we can't compare a

9    neurosurgeon with anybody but other neurosurgeons.

10             ATTORNEY MCCARTHY:  Well, that's the point

11   we are trying to advance for the Court.

12             THE COURT:  I see.  Okay.  Well, that

13   argument doesn't prevail with me.

14             I think the use of a special skill

15   enhancement is appropriate here.  Application Note 4

16   defines a special skill as a skill not possessed by

17   members of the general public, and generally requires

18   substantial education, training or licensing.

19             He has that substantial education and

20   training.  There is no doubt that the skills possessed

21   by this defendant are not possessed by members of the

22   general public, at least not yet.

23             A few generations from now, who knows?  But

24   in any event, they aren't possessed by people in the

25   general public.

1          This defendant has an extensive education.

2    He has a master of science in computer engineering.  And

3    in his own statement when he accepts responsibility he

4    says, "Without authority, I improperly used my advanced

5    computer training and skills to access and obtain

6    information I should not have had."

7          And I think this is clearly a case in which

8    the 3B1.1.3 special skill applies.

9          Now, for reasons that I am not now familiar

10   with, application of this enhancement precludes role in

11   the enhancement.

12         So, Mr. McCarthy, you win on that.

13         And I might point out, Mr. Taddei, there is

14   some ambiguity on role.  These three were all, I think,

15   deeply involved in this, and it's not pellucidly clear,

16   if I can use that tautology, it's not pellucidly clear

17   that he was any more a leader than his brother in this.

18         So, he will get the two-level enhancement

19   under 3B1.3, but he will not get the two-level

20   enhancement for role.  But that's by fiat of the

21   Sentencing Commission.

22         I'll come back to your argument on the 2 --

23   what is it, 2B1 --

24         ATTORNEY TADDEI:  Sophisticated means, your

25   Honor.

1          THE COURT:  Sophisticated means.  I'll come

2     back to that because I want to give Mr. McCarthy a

3     chance to respond to that.

4          Now we go to obstruction of justice.  And

5     Mr. McCarthy, I see that you object to obstruction of

6     justice paragraphs 121 and 135.  This goes to the

7     erasing the contents.

8          You argue, I think, that the unexecuted

9     state search warrant was not necessarily related to the

10     investigation of the instant offense of conviction.  Is

11     that your view?

12          ATTORNEY MCCARTHY:  That's right, your

13     Honor.  Under 3C1.1, if it's not related to the instant

14     offense, the Court should consider omitting these two

15     points.  And we would ask the Court to do it.  It was a

16     state search warrant that was never executed.

17          THE COURT:  All right.

18          Mr. Taddei, what's your view?

19          ATTORNEY TADDEI:  Your Honor, that's a very

20     narrow reading related to the investigation, prosecution

21     or sentencing of the instant offense of conviction.

22          The same investigators that approached the

23     U.S. Attorney's Office, honestly, very soon after they

24     attempted to get the state search warrant, were the

25     investigators that were involved in securing that state

1    search warrant.

2            The information that was erased was

3    information that was contained in the e-mail accounts

4    that the Akhter brothers and Mr. Ishak used to collect

5    credit card information; certainly relevant to the

6    offense of conviction here.

7            There is no material distinction to whether

8    the defendants erased the information because they

9    thought they were thwarting a state investigation at the

10   time or they thought they were thwarting a federal

11   investigation.  The only inquiry is whether it's

12   relevant to the investigation and prosecution of this

13   case.

14           We maintain that evidence contained in those

15   e-mail account and on those computers was relevant to

16   the investigation of this case and it was erased and, in

17   fact, hampered the investigation.

18           Thank you.

19           THE COURT:  Well, in my view, I'll overrule

20   this objection.  I think the destruction of evidence by

21   the defendant here was related to the investigation into

22   the instant offenses.  And Application Note 1 says,

23   "Obstructive conduct that occurred prior to the start of

24   the investigation of the instant offense of conviction

25   may be covered if the conduct was purposefully

1    calculated and likely to thwart an investigation or

2    prosecution of offense of conviction."

3                I don't have any doubt that this obstruction

4    does apply with respect to their activities on Victim 1,

5    Company Victim Number 1.  By deleting the information

6    from his computer and cell phone, the defendant was

7    really trying to conceal or destroy evidence that formed

8    the basis of the offense of the conviction here.

9                And indeed, he e-mailed agents who

10   participated in the search warrant, telling them that he

11   had wiped it clean and they would be disappointed.

12               So I think it clearly applies here.

13               Now we go to acceptance of responsibility.

14               Now, Mr. Taddei, let's begin with you,

15   because I think I understand the parties' positions

16   somewhat.  I'll let you go first.  And what we have here

17   is obstructive conduct that occurred before the plea.

18   No obstructive conduct occurred after the plea.

19               Now it's quite true that -- what is it?  I

20   have it here.  It's quite true that in the Knight case,

21   the Fourth Circuit made clear that although acceptance

22   of responsibility credit is not typically applicable

23   where obstruction of justice occurs, but may in an

24   extraordinary case.

25               And so the question then would be whether

1    this would be an extraordinary case.  And it is true

2    that you can have obstruction and that you can have

3    acceptance of responsibility in the same case.  The

4    Knight case makes that clear, doesn't it?

5           ATTORNEY TADDEI:  It's left to the

6    discretion of the judge, yes, your Honor.

7           THE COURT:  That's right.

8           Now, I do think there is some force to the

9    defendant's argument that once they decided to plead,

10    they ceased obstructing justice and that they came

11    clean.

12           Why doesn't that argument have a lot of

13    force?

14           ATTORNEY TADDEI:  Well, Your Honor, the

15    government, as we laid out in our filing, maintains that

16    this is simply not an extraordinary case here.  And both

17    the guidelines and the precedent of United States versus

18    Knight, which has been followed up on many times in the

19    Fourth Circuit, states that only in an extraordinary

20    case may a defendant receive both credit for acceptance

21    of responsibility as well as receive an obstruction of

22    justice enhancement.

23           And in addition to the reason I will note,

24    your Honor, for the defendant receiving this obstruction

25    enhancement, which specifically related to the conduct

1    that we just addressed, the erasing of the information

2    on the computers in July of 2014, the defendant,

3    post-charging in this case, when a criminal complaint

4    was first brought, continued to obstruct justice while

5    he was let out on bond --

6              THE COURT:  Yes, but that's a separate count

7    in the indictment.

8              ATTORNEY TADDEI:  Yes, it is, your Honor.

9    But it's indicative of why this isn't an extraordinary

10   case.

11             The government reads the phrase

12   "extraordinary case" to indicate in a circumstance where

13   the defendant goes above and beyond what a normal

14   defendant would do in the circumstances in demonstrating

15   acceptance of responsibility for their crimes and their

16   conduct.

17             Then that person, even though they in the

18   past have obstruct and received an enhancement for

19   obstruction, may receive the reduction for acceptance.

20             Based on the defendant's conduct, not only

21   post-charging but his continued activities in the jail,

22   demonstrate that he doesn't really believe what he did,

23   in terms of hacking computer systems and violating the

24   law in that way was fundamentally wrong.

25             He continues to engage in that activity.  He

1    continues to tamper with witnesses --

2              THE COURT:  I think I take --

3              ATTORNEY TADDEI:  -- after charging.

4              THE COURT:  -- your point.  And of course,

5    if there were not a separate count in the indictment, I

6    think it would be compelling.

7              My problem is that we are double-counting if

8    I don't consider that that's accounted for elsewhere.

9              ATTORNEY TADDEI:  Well, I don't think that

10   represents a problem, your Honor, because the standard

11   is whether or not this defendant has clearly

12   demonstrated acceptance of responsibility, not whether

13   or not they have pled guilty to other crimes.

14             Now, Mr. Akhter did plead guilty to his

15   obstructive activity with Mr. -- with Mr. --

16             THE COURT:  Ishak.

17             ATTORNEY TADDEI:  -- Ishak.  He has not

18   clearly demonstrated the degree of acceptance that is

19   required to overcome the extraordinary --

20             THE COURT:  So what --

21             ATTORNEY TADDEI:  -- circumstances --

22             THE COURT:  -- you are saying is that this

23   isn't an extraordinary case, far from it in your view,

24   because this defendant, after he was arrested and

25   charged, engaged in obstructive activity.

1           ATTORNEY TADDEI:  That's correct, your

2    Honor.

3           THE COURT:  He didn't engage in any

4    obstructive activity after he pled.

5           ATTORNEY TADDEI:  No, your Honor, although

6    he did engage in activity which indicates he does not

7    clearly accept responsibility for the wrongfulness of

8    his conduct.

9           THE COURT:  And what activity was that?

10          ATTORNEY TADDEI:  Breaking into a jail

11   computer --

12          THE COURT:  Ah.

13          ATTORNEY TADDEI:  -- and installing a

14   program despite clear indications that this was

15   inappropriate.

16          That's our position on this, your Honor.

17          THE COURT:  All right.

18          ATTORNEY TADDEI:  Thank you.

19          THE COURT:  Mr. McCarthy?

20          ATTORNEY MCCARTHY:  After the defendant

21   entered a guilty plea, he submitted to two very lengthy

22   debriefings, told the government everything that they

23   asked him about.

24          The government isn't suggesting to defense

25   counsel that he wasn't forthright in those --

1          THE COURT:  That he what?

2          ATTORNEY MCCARTHY:  The government has not

3   suggested to us that Mr. Akhter was not forthright

4   during those meetings.

5          He has pled guilty to the --

6          THE COURT:  No, they are suggesting that he

7   didn't admit -- he didn't accept the wrongfulness of his

8   conduct because he went ahead and did something while he

9   was in the jail.

10         ATTORNEY MCCARTHY:  Well, what I ask the

11  Court to consider is whether it's apples and oranges.

12  That is, accepting what you've done, pleading guilty to

13  it -- the acceptance of that responsibility isn't

14  diluted by engaging in completely unrelated behavior to

15  the offenses to which you pled guilty --

16         THE COURT:  Why is it unrelated?  It's

17  another computer crime.

18         ATTORNEY MCCARTHY:  Well, suppose it was an

19  assault and battery in the jail, a fight in the jail, or

20  in this case --

21         THE COURT:  Then I think --

22         ATTORNEY MCCARTHY:  -- a computer crime --

23         THE COURT:  -- your point would be stronger.

24         ATTORNEY MCCARTHY:  In this instance, with

25  regard to the computer, we have attached for the Court's

1    consideration exhibits which talk about the request he

2    made to work on the computers for the betterment of his

3    fellow prisoners.

4         He didn't get the authorization.  It's not

5    disputed.

6         THE COURT:  Well, he went ahead and did

7    something without authorization.

8         ATTORNEY MCCARTHY:  Exactly.  I mean, we

9    don't dispute that.

10         It was -- as Dan Farmer, who wrote a letter

11    to the Court, coined the phrase, stupendously foolish;

12    it's an example of a stupendously undersocialized young

13    person, to actually do that at the detention center.

14         I would only ask the Court to conclude that

15    because he demonstrates this stupendous

16    undersocialization, this stupendously poor judgment,

17    doesn't translate into him to accepting responsibility

18    for the offenses that bring us here today.

19         He has told the Court under penalty of

20    perjury at his plea hearing that he not only accepts

21    responsibility for these things, he has sat down with

22    the government -- and he will tell the Court in his own

23    words how he feels about what he has done and how sorry

24    he is and how he knows he was wrong.  He was as wrong as

25    wrong could be, and he will tell the Court that in his

 1    own words.

 2              If the Court is not inclined right now to

 3    rule in favor of the defendant on this question of

 4    acceptance of responsibility, perhaps the Court can

 5    defer judgment until it gets a chance to talk to

 6    Mr. Akhter himself.

 7              THE COURT:  All right.

 8              So thus far I have not ruled on the

 9    acceptance of responsibility.  I'll save that.  And I

10    haven't ruled on the government's objection to add two

11    levels under sophisticated means under -- what is it?

12    2B1 point -- ?

13              ATTORNEY TADDEI:  (b)(10(C), your Honor,

14    2B1.1(b)(10)(C).

15              THE COURT:  (10)(C).  So those are the two

16    things I have left to rule on.

17              Next is the number of victims.  That's been

18    resolved.

19              There is no objection to that, is there,

20    Mr. McCarthy?

21              ATTORNEY MCCARTHY:  No, your Honor.

22              THE COURT:  And is there any objection to

23    the official victim?

24              ATTORNEY MCCARTHY:  No, your Honor.

25              THE COURT:  All right.  So, that's resolved.

1          Then that takes us to grouping.  Was there a

2     problem with grouping, Mr. McCarthy?

3          ATTORNEY MCCARTHY:  Yes, your Honor.

4          THE COURT:  All right.  What's the grouping

5     problem?

6          ATTORNEY MCCARTHY:  Well, Counts 1 and 2 are

7     one group.  The other counts of conviction don't matter

8     until we get to Count 12, the obstruction count.  And

9     that gives a half a point, which translates into the

10    addition of one offense level.

11         We would ask the Court to conclude that it

12    should be grouped with Group 1, Counts 1 and 2, because

13    Count 12, the obstruction count, is taken into

14    consideration in calculating the offense level in

15    Counts 1 and 2.

16         Under 3D1.2, counts are to be grouped

17    together if they involve substantially the same harm.

18    And they define that in part as when one group of --

19    when one of the counts embodies conduct that is treated

20    as specific offense characteristics or in adjustment to

21    another count, they should be grouped together.

22         And that's what's happened in this case,

23    because we are finding him guilty of obstruction in

24    Counts 1 and 2.  It's not that he is not to be sentenced

25    on Count 12 -- and Count 12 also has the added dimension

1    of a concurrent -- or a consecutive sentence.  But for

2    grouping purposes, it shouldn't increase the offense

3    level one level.

4              THE COURT:  All right.  Just a moment.

5              (Pause.)

6              THE COURT:  Mr. Taddei, what's your view on

7    this grouping?

8              ATTORNEY TADDEI:  Your Honor, the guidelines

9    state in 3D1.2(d), as well, that it's largely a

10   case-by-case determination as to whether or not counts

11   should be grouped together.

12             The Probation Office, we believe, very ably

13   laid out why these counts were appropriately grouped.

14   Counts 1 and 2 related to the hacking of Victim Company

15   Number 1; similar harm.  They were financial crimes.

16             The rest of the counts, you have -- Court's

17   indulgence for a moment, your Honor.

18             You have Count 7, which relates to an

19   entirely separate company, not a conspiracy, conduct

20   that Muneeb Akhter himself performs.

21             Then you have Count 8, again, an entirely

22   separate conspiracy involving the State Department.

23             Count 10, you have separate conduct

24   involving false statements on a national security form

25   for an entirely different company.

1    And then finally Count 12, obstruction of

2 justice post-bond release relating to a coconspirator.

3    So our position is that the counts were

4 grouped appropriately.  Counts 1 and 2 should be

5 together because they involve similar conduct, similar

6 victims; but the rest of the counts are of a different

7 nature.

8    THE COURT:  All right.

9    The matter is before the Court on the

10 defendant's objection under paragraph 163 to grouping.

11 The defendant argues that all counts should be grouped

12 together.

13    The probation officer grouped Counts 1 and 2

14 together, and I think that's perfectly appropriate

15 because the basis of the -- both of those are related,

16 and the basis of the total amount of harm or loss and

17 the offense behavior was familiar.

18    Count 7 was the access of a protected

19 computer without authorization.  That involved a

20 different victim.  That was FedMine, where the others

21 were Victim Company Number 1.

22    Count 7 occurred prior to the conspiracy

23 with Sohaib and Ishak to steal credit card information

24 from Victim Company Number 1.  I think that supports the

25 separate counting of Count 7.

1          In any event, deciding not to group Count 7
2     with Counts 1 and 2 doesn't impact the advisory
3     guideline range, as the offense level is so much lower
4     for -- than the offense level for Counts 1 and 2.
5          Now for Count 8, the access to a government
6     computer, also involved a different computer and was
7     part of -- was not part of a common scheme or plan in
8     relation to Counts 1 and 2.  So I agree with the
9     probation officer there.
10         And I thought the conduct of Count 8 is --
11    it's a specific offense characteristic of other counts
12    of conviction.  But, again, the decision not to group
13    Count 8 with Counts 1 and 2 doesn't impact the guideline
14    range because the offense level is so much lower than
15    the offense level for Counts 1 and 2.
16              ATTORNEY TADDEI:  Your Honor --
17              THE COURT:  As to Count --
18              ATTORNEY TADDEI:  If I may, I just wanted to
19    point one thing out for the Court to note.  It's that
20    with the pending objections to acceptance of
21    responsibility, as well as the government objections,
22    there may be impacts on the guideline range per the
23    grouping rules, depending on how the Court rules on
24    those outstanding issues.
25              THE COURT:  Yes, I think that's a point well

1    taken, which is another way of saying that you may have

2    figured out how I am going to rule on those matters.

3              But let me just point out that as to

4    Count 12, the probation officer I think correctly did

5    not group that count of conviction with the others.  It

6    isn't related to any other offense conduct, other than

7    as an attempt to obstruct justice and avoiding an

8    investigation of it.

9              And after his release on bond he violated

10   his conditions of release by having contact with Ishak

11   and paying for Ishak's trip to leave the U.S.

12             And I think -- I think of the grouping by

13   the probation officer is correct.

14             Now, the government has raised the question

15   whether my statements that it -- the offense level would

16   be so much less that it wouldn't affect it might change

17   if I -- depending on my rulings on the acceptance of

18   responsibility and the sophisticated means.

19             I think I have heard all the argument I need

20   on acceptance of responsibility, and I think there

21   aren't any other -- there aren't any other objections by

22   the defendant, are there, Mr. McCarthy, that I haven't

23   addressed?

24             ATTORNEY MCCARTHY:  No, your Honor.

25             I would point out that as far as grouping is

1    concerned, I don't think the Court's decision on

2    acceptance of responsibility would affect that.  That's

3    something that --

4            THE COURT:  I think you might be right, but

5    I am not sure about the other one.  I am going to think

6    about that.  Because...

7            Well, let's go back, Mr. Taddei, and let me

8    hear from you on why sophisticated means should be

9    applied in addition to the special skill.

10           Isn't that double-counting of some sort?

11           ATTORNEY TADDEI:  No, your Honor.  It

12   involves separate considerations.  An individual can

13   engage in sophisticated means in order to execute an

14   offense, you know, consider someone very -- going to

15   extreme efforts to clandestinely hide something.

16           That doesn't necessarily mean that they used

17   a particular skill or training --

18           THE COURT:  And what is -- what's the

19   sophisticated means, then?

20           ATTORNEY TADDEI:  The sophisticated means

21   here, your Honor, is inserting complex code onto Victim

22   Company 1's computer, disguising the code in such a way

23   that it was almost undetectable to anyone who didn't

24   know that it was there.

25           The only reason the code was actually

1    discovered is because Mr. Ishak reported exactly what

2    line of the website to find it in.  Otherwise, it could

3    still be there on the website on this company.  This was

4    done after another code that had been inserted wasn't

5    particularly effective.

6            Setting up e-mail accounts to act as

7    repositories for information that was automatically

8    forwarded to the defendant is particularly

9    sophisticated.

10            There is no doubt that the defendant used

11    his training and his talents to perform these aspects of

12    the crime.  But that doesn't make the execution of it

13    any less sophisticated, your Honor, would be our

14    position.  That is the material difference here between

15    the two.

16            THE COURT:  All right.

17            Mr. McCarthy, anything else?

18            ATTORNEY MCCARTHY:  Just one quick

19    observation.

20            In describing this sophisticated means, the

21    government really is just describing his special skills,

22    and it is double-counting.  If somebody with special

23    skills then did other things unrelated to computer

24    familiarity, such as -- you know, the mine wanders about

25    all the things somebody could do that would be

1    sophisticated, not related to his computer skills.

2           But in this case, on this case-by-case basis

3    that the Court engages in, in this case they are mirror

4    images of each other.  And as I say -- as I use that

5    word, I caution myself because the Court had corrected

6    me in the past on using "mirror image."  But in this

7    case, the sophisticated means is Mr. Akhter's special

8    skills and his computer abilities.

9           THE COURT:  I am going to recess this

10   matter, because it's ten minutes to 1:00.  I need to

11   have a quick sandwich and reflect on this.

12          And I am going to take up the other sentence

13   immediately following this one.

14          When I return, I will rule on the

15   outstanding objections, which are acceptance of

16   responsibility by the defendant, and the sophisticated

17   means objection by the government.  Those are the two

18   that remain.

19          Am I correct, Mr. Taddei?

20          ATTORNEY TADDEI:  That's correct, your

21   Honor.

22          THE COURT:  Mr. McCarthy.

23          ATTORNEY MCCARTHY:  Yes, your Honor.

24          THE COURT:  All right.

25          We will recess until -- let's make it 1:30,

1      so that everyone can have an opportunity to eat.

2                 And Mr. Abbas, it will be 2:00 o'clock by

3      the time we get to you, as it turns out.

4                 ATTORNEY ABBAS:  That would be perfect, your

5      Honor.

6                 THE COURT:  All right.  Court stands in

7      recess until 1:30.

8                 (Court recessed at 12:45 p.m.)

9                 (Court called to order at 1:32 p.m.)

10                 THE COURT:  All right.  Before the Court are

11      some remaining objections and I want to review those,

12      including some I have already done.

13                 But I have decided that the sophisticated

14      means, as the government argues, can be applied in a

15      case where there is also special skill used; no doubt

16      about that.

17                 But what I find persuasive is that the

18      arguments made for sophisticated means are essentially

19      the same arguments that are made for using a special

20      skill.

21                 Now there is -- there is some difference

22      there in the sense that you can say that certain things

23      were put on a computer that couldn't be detected, that

24      sort of thing.

25                 But I think in the end, as far as I'm

1    concerned, it does come close to double-counting.  And

2    so I am not going to apply the sophisticated means.

3              I am going to apply the special skill.  I

4    think that clearly applies.

5              Therefore, role in the offense does not

6    apply and he doesn't get role in the offense.

7              As to grouping, I think the probation

8    officer has it exactly right the way she has grouped

9    them, for the reasons I previously stated.  That is,

10   Counts 1 and 2 should be grouped.  Count 7 is different.

11   Count 8 is, again, different; and so is Count 12.

12             In the end, I don't think any of that makes,

13   at most, an offense level difference, if that, and it

14   isn't going to affect my decision.

15             Now let's go back.  That leaves acceptance

16   of responsibility as the only matter that I haven't

17   dealt with.

18             I did overrule the objection to obstruction

19   of justice.  That does get added.  And he does get the

20   special skill enhancement.

21             Now, acceptance of responsibility.  It is

22   quite true, as counsel both recognized -- as both

23   counsel recognized, that in the Fourth Circuit you can

24   have acceptance with obstruction, but it -- it's an

25   extraordinary case that requires that, and the Court has

1        to review the record as a whole and make a judgment.

2                There is very little guidance as to what

3        constitutes an extraordinary case.  I am bound to say I

4        don't have a recollection of any case in the recent

5        past, or even in the distant past -- although in the

6        distant past there I didn't have guidelines.  There were

7        no guidelines in the distant past.  But in the past that

8        I can remember, I have never granted acceptance of

9        responsibility in the face of an obstruction claim.

10               Now the argument is made by Mr. McCarthy

11       that there should be no bar to acceptance here because

12       all of his obstructive behavior occurred before his

13       plea.

14               That, of course, isn't a conclusive answer

15       to the question because, as the Fourth Circuit in the

16       Knight case pointed out, you could still have a lack of

17       acceptance even if the obstructive behavior occurred

18       prior to the plea.

19               In any event, Mr. Taddei points out, there

20       was some obstructive behavior -- not obstructive --

21       there was some behavior post-plea that suggested a lack

22       of acceptance of responsibility, namely the shenanigans

23       with the jail computer.

24               In the end, it's a judgment, just like the

25       sentence.  And I have looked at the record as a whole.

1    The argument -- or the government doesn't contest the

2    fact that this defendant was forthright and honest when

3    he did make his meetings or his proffers to the

4    government.  I have that right, I think.

5              Don't I, Mr. Taddei?

6              ATTORNEY TADDEI:  Yes, that's correct, your

7    Honor.

8              THE COURT:  Now the government in the plea

9    agreement didn't agree to an acceptance of

10   responsibility.  All it agreed to was that if he

11   qualified for acceptance, that the government would give

12   him the additional -- a motion for the additional level.

13   So I think we are really talking about three levels

14   here, one way or the other.

15             In the end, I think it's a very close

16   question, and I am not even sure in the end it makes

17   much difference to my sentencing decision.  But I am

18   going to give Mr. Akhter acceptance of responsibility

19   credit.

20             So in the end, let me recite for the record

21   how this all comes out for this defendant.

22             For Count 1, it's an offense level of 6,

23   with specific offense characteristics of loss of more

24   than 30,000, for plus 6.  For 50 or more victims is plus

25   4.  For trafficking of unauthorized access devices, a

1    plus 2.  And attempt to obtain personal information

2    under 2B1.1(b)(17).

3            That comes out to -- and plus 2 for special

4    skills.  So that would -- and 2 for obstruction of

5    justice, comes out to a total of 24, minus 3 for

6    acceptance, is 21.

7            Now, for Counts -- that would be the same

8    for Count 1 and Count 2, I believe.

9            ATTORNEY TADDEI:  Your Honor, just to --

10   just for purposes of the record, the government would

11   move to apply that additional point pursuant to

12   Sentencing Guideline, I believe --

13           THE COURT:  Thank you.

14           ATTORNEY TADDEI:  -- it's 3E1.1.

15           THE COURT:  I thank you for that, although I

16   think you were obligated to do that.

17           ATTORNEY TADDEI:  That's correct, your

18   Honor.

19           THE COURT:  All right.

20           But I think what I have done covers Count 1

21   and Count 2.

22           Am I correct, Ms. Riffle?

23           THE PROBATION OFFICER:  Yes, your Honor.

24   But the acceptance of responsibility would be applied

25   after the grouping.

1          THE COURT:  After the grouping.

2          THE PROBATION OFFICER:  Yes.

3          THE COURT:  All right.  So I won't give the

4     three yet.

5          So that's 24 for Counts 1 and 2.

6          THE PROBATION OFFICER:  Yes, your Honor.

7          THE COURT:  For Count 7, it's a base offense

8     level of 6, with 4 levels for offense of a loss of more

9     than 10, but less than 30.  And that comes out to an

10    offense level of 10.

11         Is that right, Ms. Riffle.

12         THE PROBATION OFFICER:  Plus 2, your Honor,

13    for use of a special skill.

14         THE COURT:  Special skill, thank you.  So

15    that's 2, so that's 12.

16         Then we go to Count 8.  And Count 8 it's

17    base offense level of 6, and the offense involved an

18    intent to obtain personal information, 2.1.1(b)(17),

19    that's plus 2.

20         And the offense involved a computer system

21    used by the government, that's plus 2.

22         And a victim-related adjustment under

23    3A1.2(a) of plus 3; and a special skill is plus 2, for

24    a -- the offense level of 15.

25         For Count 10, it's 6.

1          For Count 12, it is 14 plus 3, for 17.

2          Do I have that right, Ms. Riffle?

3          ATTORNEY TADDEI:  Yes, your Honor.

4          THE PROBATION OFFICER:  Yes, your Honor.

5          THE COURT:  So now we group, and when we

6    group we group Counts 1 and 2, which gives you one unit.

7    Count 7 doesn't add anything.  Count 15 doesn't add

8    anything.

9          Count 6 doesn't add anything -- I beg your

10   pardon -- Count 8 -- 7 and 8 don't add anything.  Count

11   10 doesn't add anything.  And Count 12 doesn't add

12   anything because the adjusted offense levels are so much

13   lower.

14          Count 12 does add a .5.  Why does it add

15   a .5, Ms. Riffle?

16          THE PROBATION OFFICER:  Because I believe

17   it's within 5 to 9 offense levels --

18          THE COURT:  All right.

19          THE PROBATION OFFICER:  -- of the first

20   count.

21          THE COURT:  All right.  So that -- so the

22   greatest of the offense levels is 24.  We add 1 to get

23   25.

24          Now we subtract 3 to get 22.

25          THE PROBATION OFFICER:  Yes, your Honor.

1          THE COURT:  And so the total offense level

2    would be 22, with a criminal history category of 1,

3    which would lead to 41 to 51 months range.

4          Apart from the rulings I have made,

5    Mr. Taddei, is that a correct calculation?

6          I know you object to some of the rulings.

7          ATTORNEY TADDEI:  Yes, your Honor.  That is

8    a correct calculation.

9          THE COURT:  And Mr. McCarthy, I know you

10   object to some of the rulings, but given my rulings, is

11   that a correct calculation?

12          ATTORNEY MCCARTHY:  Yes, your Honor.

13          THE COURT:  All right.

14          Now we are at the point of allocution.

15          Mr. Muneeb, this -- or Mr. Akhter, this is

16   now your opportunity to address the Court and to say

17   anything at all you wish to the Court by way of

18   extenuation, mitigation or, indeed, anything you think I

19   should know before sentence is imposed.

20          You don't have to say anything, Mr. Akhter,

21   but you do have the opportunity to say something if you

22   wish to.

23          THE DEFENDANT:  Okay.  I would like to say

24   something, sir.

25          THE COURT:  All right.  Go right ahead, sir.

ALLOCUTION BY THE DEFENDANT

THE DEFENDANT:  I cannot state how deeply I regret my criminal behavior.  Every day I wish I could rewind time to correct myself and truly consider the consequences of my actions.

However, I take responsibility for my mistakes.  I hope our activities have not subtracted from the good that we have accomplished and that we can continue to accomplish.

We got carried away.  I assure you we will never approach questionable activity again in our life.

I need to apologize to every business affected and the victims whose information was used, whose information -- who fell victimized, who were threatened by my activities.

I also want to apologize, and thank everybody that supported us and sent letters; especially to my mother and grandma.  I betrayed their trust by this messy situation and I am extremely sorry.

I would like to make amends with my skills and my knowledge to prevent others from similar situations, and I want to educate the public.

I am going to continue to try to find gainful employment after my incarceration.  I will assist the government in any other cases -- this case

1    and other cases.

2                    Please allow me to rectify myself of my past

3    and save my future.

4                    I would also want the Court to recognize

5    that my brother is going to be sentenced, and his

6    counsel is going to object to the victim count, and I

7    wanted that to be considered.

8                    But, other than that --

9                    THE COURT:  What do you mean by that?

10                   THE DEFENDANT:  The victim count of four to

11   two.  I don't know if they have resolved that or not.

12                   Is it resolved?

13                   Yes.

14                   So other than that, my time in prison has

15   taught me the value of freedom.  I will never do this

16   ever again.  Thank you.

17                   THE COURT:  I am not sure I understood the

18   victim count remark.

19                   THE DEFENDANT:  It's been resolved, I hear

20   from counsel.

21                   THE COURT:  All right.  You may be seated.

22                   Mr. McCarthy?

23                   ATTORNEY MCCARTHY:  Thank you, your Honor.

24

25           ALLOCUTION ON BEHALF OF THE DEFENDANT

1          ATTORNEY MCCARTHY:  May it please the Court,

2      very briefly.

3          Something we just discovered about

4      Mr. Akhter, which we brought to the Court's attention

5      promptly at the end of last week and this week, was the

6      fact that he had taken the money he earned in the DARPA

7      contract -- which he performed faithfully -- and applied

8      it to his grandmother's mortgage.

9          THE COURT:  I saw that.

10         ATTORNEY MCCARTHY:  That, more than

11     anything --

12         THE COURT:  And his grandmother acknowledged

13     it in a letter.

14         ATTORNEY MCCARTHY:  Indeed.

15         THE COURT:  And indeed, all those letters

16     will be part of the presentence report.

17         ATTORNEY MCCARTHY:  And we know the Court

18     has given them careful consideration, and we thank the

19     Court for that.

20         The only other point I would want to make

21     for the Court is, this probably will be as close to a

22     juvenile sentencing proceeding as the Court --

23         THE COURT:  "This probably will..."

24         ATTORNEY MCCARTHY:  -- will be as close to a

25     juvenile sentencing proceeding as this Court will get,

1    in the sense that the defendant and his brother, his

2    twin brother, they are both 23 years old -- but have

3    repeatedly demonstrated stupendous undersocialization,

4    have lived in the bubble of their computer world while

5    students, and have not yet fully formed as adults.

6              THE COURT:  Well, I don't know about this

7    bubble that you are referring to.  You know, they stole

8    money.

9              ATTORNEY MCCARTHY:  Indeed.

10             THE COURT:  And they took that money and

11   they bought things, computers, and they bought their

12   entrance tickets to computer conventions and that sort

13   of thing.

14             ATTORNEY MCCARTHY:  They committed crimes.

15             THE COURT:  They stole money.

16             ATTORNEY MCCARTHY:  They committed crimes.

17   There's no question about that.

18             THE COURT:  I don't see how that could have

19   escaped their attention as being dead wrong.

20             ATTORNEY MCCARTHY:  And when they did it,

21   they knew they were getting a benefit from it.  There is

22   no question about that.  And they understand that.  I

23   can't speak for Sohaib.  His counsel can capably speak

24   for him.

25             But for Muneeb Akhter, when I say they are

1    in -- Muneeb is in a bubble, I don't mean to trivialize

2    the choices they made.  But what I would ask the Court

3    to do is temper the ultimate result with an appreciation

4    for the fact that this young gentleman stands before the

5    Court as a first offender, making tremendously poor

6    decisions that perhaps a better socialized person would

7    not make; not to --

8              THE COURT:  What do you mean by

9    "socialized"?

10             ATTORNEY MCCARTHY:  The months that we have

11   spent with Mr. Akhter -- what I mean to suggest to the

12   Court is the -- he presents as a wonderfully developed

13   person in his world of computer science.  And the

14   muscles in his mind that work toward that are

15   hyper-developed.

16             Meanwhile, as Dan Farmer pointed out in his

17   letter, other aspects of his person are stupendously

18   underdeveloped; the ability to simply understand how the

19   choices he made to follow a computer problem to its very

20   end can have consequences for people.

21             One of the things that we learned while we

22   were working on the case is the hackathons, which we

23   brought the Court's attention to.  That word frightened

24   us when we first of it, that our clients engaged in

25   hackathons.

1          And what our client explained to us was,

2     hackathons are legitimately sponsored events by

3     universities and businesses to bring people with these

4     skills together to solve problems.  And the idea --

5          THE COURT:  Well, let's come back to

6     socialization.  What socialization was he missing that

7     didn't tell him that stealing money from people was

8     wrong?

9          ATTORNEY MCCARTHY:  Well, I don't mean to

10    suggest to the Court that he did not understand the

11    wrongfulness of his behavior.  What I mean to suggest to

12    the Court is, he has this capacity, that he has got to

13    grow out of, of telescoping things down to the task

14    immediately in front of him, without looking up, looking

15    to his left, looking to his right, and contemplating the

16    impact those choices were making on people; not that he

17    didn't know what he was doing was wrong when he did it.

18         But he, more than a lot of people that

19    Mr. Petrovich and I have worked with in the past, does

20    present with that peculiarity.  And it's that

21    peculiarity I would ask the Court to just be thoughtful

22    about when it finally fashions a sentence on the young

23    man.

24         Thank you, your Honor.

25         THE COURT:  Mr. Taddei.

ALLOCUTION BY THE GOVERNMENT

ATTORNEY TADDEI:  Your Honor, the government maintains that a within-guideline sentence of 51 months of imprisonment is appropriate in this case and comports with the Section 3553(a) factors.

Now the Court is already very aware of all the facts relevant to this very expansive case.  We are not going to belabor all of the appropriate points here, but I do want to highlight a few things.

First, I would like to point out that these were not victimless crimes.  The defendant took advantage of the goodwill, first of Mr. Ishak's mother, who is the CEO of Victim Company 1.  She had offered up her warehouse as both a sanctuary to Mr. Akhter when he was experiencing family trouble, as well as a physical location for his and his brother's fledgeling business.

Muneeb Akhter repaid her by breaking into her computer system, inserting a malicious code and stealing thousands of her customers' personal information.

Now those customers are also properly considered victims in this case, even though they did not suffer the ultimate financial losses of over $30,000, which fell to the companies in this case.

The interviews of those numerous credit card

1    holders paint a picture of the average victim.  Most of

2    them are elderly women who had the misfortune of

3    purchasing a beauty product on Victim Company 1's

4    website.  They then had to go through the stress of

5    having their credit card and personal information

6    compromised.

7              This defendant was even so callous as to

8    sell these victims' personal information on the dark web

9    to anonymous users for just five dollars a pop.

10             There were distinct victims of Muneeb

11   Akhter's other hacking activities as well, your Honor.

12   One of them, Ashok Mehan, who is the CEO of Victim

13   Company 2, is in the courtroom here today.

14             Mr. Akhter's treatment --

15             THE COURT:  And he is Victim Company

16   Number 2 --

17             ATTORNEY TADDEI:  Yes, your Honor.

18             THE COURT:  That's the Mine --

19             ATTORNEY TADDEI:  FedMine, your Honor.

20             THE COURT:  FedMine.

21             ATTORNEY TADDEI:  Yes, your Honor.

22             THE COURT:  Yes.

23             ATTORNEY TADDEI:  Now, Mr. --

24             THE COURT:  That's the aggregation of

25   information concerning government contracts and bids and

1    so forth.

2              ATTORNEY TADDEI:  Yes, your Honor.  That's

3    correct.

4              THE COURT:  All right.

5              ATTORNEY TADDEI:  Now, Mr. Akhter's

6    treatment of Mr. Mehan bears strong similarities to his

7    treatment of Mr. Ishak's mother.  Mr. Akhter took

8    advantage of the opportunity to do contract work for

9    Mr. Mehan's company.

10             Mr. Akhter did not accept Mr. Mehan's

11   refusal to give him access to his company's valuable

12   database of federal contract information.  So Mr. Akhter

13   did what he always seems to do when he is told no and a

14   computer system is involved.  He broke into Victim

15   Company Number 2's computer systems.

16             His goal was, again, entirely self-serving.

17   He wanted the information so that he could use it to

18   form contract proposals that would benefit his own

19   company.

20             Another victim here that is present today is

21   Special Agent Gary Ross, with the Department of Homeland

22   Security.  By the time that Sohaib Akhter decided to use

23   the State Department access to look up dozens of

24   people's confidential passport information, Special

25   Agent Ross was very familiar to Muneeb and his brother.

1          The agent had been investigating the

2     Akhter's fraudulent activities for months, and he had

3     been one of the agents to execute the search warrant at

4     their house.

5          So now what did Muneeb and Sohaib do?  They

6     removed Special Agent Ross's information from State

7     Department systems, and that information included his

8     name, his photograph, his address, and other sensitive

9     information.

10          At that point, Muneeb demonstrated a

11     dangerously vindictive mindset when he told Ishak that

12     he was considering selling Special Agent Ross's

13     information on the Darknet, because criminals might find

14     it valuable.

15          Now the defendant maintains that he did not

16     seriously contemplate following through with this

17     threat.  But, your Honor, I encourage you to consider

18     Mr. Akhter's prior conduct.  He had previously sold the

19     personal and credit card information of Victim Company 1

20     customers on the dark web for five dollars per bundle.

21     Is it outlandish to think that he would seriously

22     consider doing the same with the special agent's

23     information?

24          Muneeb Akhter's illegal possession of the

25     agent's most personal information and his threat to sell

1    it represented a great danger to the agent and his

2    family.  The defendant must be held accountable for

3    this.

4              Furthermore, your Honor, we encourage this

5    Court to consider the ongoing danger presented by the

6    union by Mr. Akhter's computer skill and his complete

7    disregard for both physical and electronic boundaries.

8              As reflected in Mr. Akhter's statement of

9    facts, a recorded conversation reveals that in

10   June 2014, Muneeb Akhter and his brother actively

11   discussed plans for securing government employment,

12   lying in wait to understand insider protection methods,

13   accessing viruses and malware strains, and retooling

14   them so they become a weapon.

15             A few months later, when Sohaib Akhter had

16   settled into his position at the State Department, that

17   conversation proved prophetic.  Sohaib Akhter, with his

18   brother's help, went into work on a weekend at a State

19   Department building when he knew no one else would be

20   around.  He removed part of a wall and then attempted to

21   secretly install a wireless device connected to the

22   State Department computer systems.

23             If he had been successful, the Akhter

24   brothers would have had wireless access to computer

25   systems associated with a bureau in charge of

1    immigration and diplomatic security.

2            The danger of that access is again laid out

3    by a conversation that Sohaib Akhter had about what he

4    could do with the access:  access passport applications,

5    unilaterally approve visas and sell them, and create

6    passports and visas.

7            Fortunately, their plan failed.  But

8    regardless of the Akhter brother's lack of success,

9    their skill sets, coupled with the mere fact that they

10   even contemplated such actions, demonstrate the dangers

11   that they pose to individual and national security.

12           Now finally, your Honor, just in summing up,

13   I want to touch on something that pervades the

14   defendant's sentencing position here, and that's the

15   assertion that he deserves some degree of leniency for,

16   in his words, his utter failure to appreciate the

17   seriousness of his conduct.  In multiple filings, the

18   defendant makes references to his gullibility and his

19   stupendous undersocialization.

20           What I am left wondering, your Honor, is how

21   many signs did this defendant need that his conduct was

22   wrong?

23           He was first interviewed by Homeland

24   Security agents in June 2014, after he boasted to

25   coworkers that he had illegally hacked commercial

1    websites to add value to cards.

2            Then in July 2014, a month later, law

3    enforcement officers raided his home.  Still, he and his

4    brother's criminal activity continued.

5            Then, after he was charged in a criminal

6    complaint in March of 2015, he obstructed justice by

7    aggressively attempting to keep his coconspirator,

8    Ishak, from law enforcement officers.

9            Then in May of 2014 -- '15 -- excuse me,

10   your Honor -- this Court revoked his bond for those

11   obstructive activities.  At that point it had been

12   almost a year since his first interview with Homeland

13   Security agents.

14           Then, while still in jail following his bond

15   revocation, the defendant continued to tamper with

16   computers, in clear violation of established rules, and

17   in a manner that could have compromised the security of

18   the facility.

19           Will the defendant ever accept full

20   responsibility for his actions?

21           On many occasions I've heard this Court

22   wisely note that life is about choices and, although

23   individuals don't choose where they are from, they do

24   choose what to do with the opportunities they are given.

25           Muneeb Akhter was 22 and 23 years old when

1    he committed the six felony offenses that this Court

2    will sentence him for today.  He has undergraduate and

3    graduate degrees from one of this area's most

4    prestigious universities.  And the letters submitted on

5    his behalf exemplify the fantastic opportunities and the

6    wide breadth of human interaction, particularly in the

7    technology and business worlds, that he has had.

8             Despite all of this, all of these tremendous

9    opportunities, Mr. Akhter attempts to minimize choices

10   by insinuating that he was so young and so

11   unsophisticated that he should not be fully held

12   accountable for his actions.  We ask that he be held

13   accountable.

14             Thank you, your Honor.

15             THE COURT:  All right.

16             Anything further, Mr. McCarthy, by way of

17   response?

18             ATTORNEY MCCARTHY:  Nothing to add to that,

19   your Honor.

20             THE COURT:  All right.

21            IMPOSITION OF SENTENCE BY THE COURT

22             THE COURT:  Mr. Akhter, come to the podium.

23             THE DEFENDANT:  (Complies.)

24             THE COURT:  Mr. Akhter, you stand convicted,

25   as a result of your pleas, to 6 counts of a 12-count

1    indictment.  I won't rehearse the offense conduct as I

2    did at the outset, but they are serious crimes.

3         The law requires that I consider a variety

4    of factors in imposing an appropriate sentence; first,

5    your personal history and characteristics, with which I

6    am familiar.

7         I have had letters from your mother, letters

8    from your father, from other family members, and it is

9    quite apparent to me that you are the beneficiary of a

10   good strong family.  You are the beneficiary of a good

11   educational opportunity, that you have availed yourself

12   of.

13        As Mr. McCarthy points out, I tell all

14   defendants that life is making choices and living with

15   the consequences of the choices that you make.  You

16   don't determine where you are born.  You don't determine

17   to whom you are born or whether you are born with

18   handicaps or talents.

19        Well, I must note that you were a

20   beneficiary.  You were lucky in all of those.  You were

21   born to a good family.  You were born with good

22   abilities.  You were born with good opportunities.  And

23   yet you chose to make bad decisions, and there are

24   consequences.

25        They are not bad decisions; they are

1    criminal decisions.  These are not errors in judgment.

2    They are decisions to commit crimes.  You need to

3    understand that.

4              The only reason you were putting these bugs

5    on these other computers to get information was to make

6    use of them to make money.  You were going to steal

7    money from these card holders.

8              I don't think, in the end, you did get any

9    information from FedMine that you could sell.

10             Is that right, Mr. Taddei?

11             ATTORNEY TADDEI:  That's slightly incorrect,

12   your Honor.  The defendant had full access --

13             THE COURT:  Yes, he did.

14             ATTORNEY TADDEI:  -- to the system.

15             THE COURT:  But did he -- he didn't sell any

16   of that --

17             ATTORNEY TADDEI:  He didn't remove it, he

18   didn't sell it, no, your Honor.

19             THE COURT:  Right.  That's the point I was

20   making.  But that's just because, I guess, the

21   opportunity ended.

22             Well, I am familiar with your personal

23   history and characteristics, and I have recited some of

24   them.  You clearly have talent.  You have ability.  And

25   it is up to you whether you squander that ability or

1    whether you make good use of it.

2            Now, you have a lot of years left open to

3    you and you have a lot of decisions left open to you.  I

4    hope and trust you will make better decisions in the

5    future.

6            The law requires that I impose a sentence,

7    also, that reflects the seriousness of the crimes.

8            They are serious.  They are very serious.  I

9    think -- they are all serious.  The theft from these

10   people from Victim Number 1 Company, the fact that you

11   tried to access State Department information, very

12   serious crimes.

13           The law also requires that I impose a

14   sentence that promotes respect for the law, that

15   provides just punishment for this conduct, and that

16   serves to deter you and to deter others.

17           Well, I hope that you are now properly

18   deterred, that you will not commit criminal conduct in

19   the future.  But the sentence I impose must nonetheless

20   stand as a beacon, as a warning to others not to engage

21   in conduct of this sort.

22           And the law requires that I consider the

23   guidelines.  They are advisory, not mandatory, but they

24   are a factor that I consider and they are an important

25   factor in avoiding unwarranted disparities between the

1    sentence I impose on you and the sentence imposed on

2    others convicted of essentially similar conduct.

3           But in the end, a sentence is a judgment.

4    It is a judgment, not a calculation, a mathematical

5    calculation, that is done by the Court.

6           I have considered all of these factors, and

7    it is the judgment of this Court that you should be

8    committed to the custody of the Bureau of Prisons for a

9    total period of 39 months.

10          I am going to impose three of those months

11   on Count -- Count 12, is it?  What's the obstruction

12   count?  It's Count 12.

13          ATTORNEY TADDEI:  That's correct, your

14   Honor.

15          THE COURT:  And that is to run consecutively

16   to 36 months on the remaining counts all to run

17   concurrently.

18          So, in other words, 36 months on Counts 1,

19   2, 7, 8, 10, and then 3 months to run consecutively with

20   respect to Count 12.

21          Upon release from confinement, you are to

22   serve a period of three years of supervised release with

23   respect to each of the counts, but the three years is to

24   run concurrently.

25          As a special condition of the supervised

1    release, you are to pay restitution to all victims of

2    the offense.

3         Do we have an order to that affect?

4         ATTORNEY TADDEI:  Yes, your Honor.  We have

5    restitution and forfeiture orders for the Court.

6         THE COURT:  All right.  Hand those to the

7    court security officer.

8         I will enter and impose a restitution

9    obligation and a forfeiture judgment.

10         And the law requires that you pay a $100

11    special assessment, for a total of $600.  It's $100 per

12    count.  That's due and payable immediately.

13         Now in view of the restitution obligation,

14    does the government argue for a fine?

15         ATTORNEY TADDEI:  No, your Honor.

16         THE COURT:  All right.  In view -- I think

17    that's appropriate.

18         Now, I'll waive -- somebody already checked

19    that I'll waive interest.  Was that -- who checked

20    "waive interest"?

21         ATTORNEY TADDEI:  Your Honor, I believe I

22    checked that.  That was my mistake.  I apologize.

23         THE COURT:  Well, it's what I do typically,

24    so it's all right in this instance.

25         And I will enter this order, and it will

1    begin at $100 a month or 25 percent of net income,

2    whichever a greater, beginning 60 days after release

3    from confinement.

4              And with respect to the order of forfeiture,

5    the items that are forfeited -- there is a money

6    judgment.

7              Do you have the money judgment?

8              ATTORNEY TADDEI:  Not at this time, your

9    Honor.

10             THE COURT:  Why shouldn't it be a money

11   judgment in the amount of the losses to the victim?

12             ATTORNEY TADDEI:  It is, your Honor.  The

13   money judgment amount should equal the amount of

14   restitution owed to the victims.

15             THE COURT:  Any reason why you can't submit

16   that early next week?

17             ATTORNEY TADDEI:  We do not have the funds

18   from the defendant at this point, your Honor, for that,

19   but we would be happy to once we have received the

20   forfeiture amounts, to remit that to the Clerk of the

21   Court.

22             THE COURT:  Mr. McCarthy, is he prepared to

23   pay this restitution today?

24             ATTORNEY MCCARTHY:  No, he is not, your

25   Honor.

1          THE COURT:  So then there will be a money

2    judgment entered, won't there?

3          ATTORNEY TADDEI:  Yes, your Honor.

4          THE COURT:  Well, why shouldn't you submit

5    an order, then, a judgment order?

6          ATTORNEY TADDEI:  There is a judgment order

7    in there, your Honor, for forfeiture.

8          THE COURT:  Ah.  All right.

9          ATTORNEY TADDEI:  Sorry for the confusion,

10   your Honor.

11         THE COURT:  It's not for the -- an amount

12   certain, though.

13         ATTORNEY TADDEI:  Yes, it is.

14         THE COURT:  What paragraph?

15         Oh, yes, it is, 31,375.

16         ATTORNEY TADDEI:  Yes, your Honor.  It

17   should -- if I am correct, it should equal the amount of

18   the restitution.

19         THE COURT:  It does.  All right.

20         Well, as I said, Mr. Akhter, life is making

21   choices and living with the consequences of the choices

22   you make.

23         Unlike many people, you were born fortunate.

24   You were born into a good family.  You were born with

25   gifts and talents and intelligence.  And you must make

1    better decisions.

2            If you make criminal decisions in the

3    future, the consequences will be far worse.  But you

4    have a long life ahead of you, Mr. Akhter, and there is

5    no reason why that long life should not be productive

6    and entirely law-abiding.

7            Anything else in this matter today, on

8    behalf of -- Ms. Riffle, anything else?

9            THE PROBATION OFFICER:  Your Honor, any

10   special conditions?

11           THE COURT:  Yes.  Let me -- thank you for

12   reminding me.  There are special conditions.

13           Ms. Riffle, do you have those on that sheet?

14   If you would hand those to the court security officer.

15   They seem to have escaped my possession here.

16           As special conditions of your supervised

17   release, Mr. Akhter, you must comply with the

18   requirements of a computer monitoring program as

19   administered by the probation officer.

20           In other words, you have to consent to the

21   installation of computer monitoring software on any

22   computer that you have access to.  And that will be done

23   by the probation officer.

24           And you may not incur any new credit charges

25   or open additional lines of credit without the approval

1    of the probation officer.

2                And you must provide the probation officer

3    with requested financial information.

4                And, of course, you must apply all monies

5    received from winnings or inheritance or judgments or

6    refunds of taxes and the like to your restitution

7    totaling $31,375.55.  That's the restitution that I am

8    imposing.

9                And the victims that will go to are all of

10   these companies:  U.S. Airlines, Viceroy Hotel, Dollar

11   Rental Car, American Airlines, United Airlines,

12   DealDash, Cabella's, Sands Institute, Overnight Prints,

13   B-Zid, Newegg, 1105 Media, IBM, TechConnect, Busch

14   Gardens, GrubHub, and Microsoft Online.

15               Now, the way in which I want that done is,

16   he's going to pay either 25 percent of his income or, if

17   it's less than -- no less than $100 a month or as much

18   as 25 percent of his income.

19               And the way in which I want that done is to,

20   as each check comes in for each month, the victims,

21   starting with the greatest amount, get the first check.

22   In other words, I think it's Sands Institute -- what is

23   Sands Institute?

24               ATTORNEY TADDEI:  It is the organization

25   that supplied learning materials for particular

1    certification courses.

2         THE COURT:  All right.  Well, they will get

3    the first check.  Then the biggest loss -- the next

4    biggest loss is the -- no, they aren't the biggest loss.

5    The first one is DealDash.  What is DealDash?

6         ATTORNEY TADDEI:  It's an online auction

7    site that allows people to bid for various items,

8    computers --

9         THE COURT:  So, obviously, they were bidding

10   and getting certain items and they didn't pay.

11        ATTORNEY TADDEI:  Yes.  That's correct, your

12   Honor.

13        THE COURT:  All right.  And they were using

14   stolen identity information to do that.

15        ATTORNEY TADDEI:  Yes.

16        THE COURT:  All right.

17        So the first check will go to the biggest

18   loss, DealDash.  The second one will go to the second

19   one, which is the Sands Institute.  And the third one

20   would go to the next one down the line, which is U.S.

21   Airlines.  And so on.  I think that makes it clear.

22        Is there anything else that needs to be said

23   in connection with the sentence, Ms. Riffle?

24        THE PROBATION OFFICER:  No, your Honor.

25        THE COURT:  From the government, Mr. Taddei?

1          ATTORNEY TADDEI:  No, your Honor.  Thank

2     you.

3          THE COURT:  Mr. McCarthy, for the defendant?

4          ATTORNEY MCCARTHY:  If it please the Court,

5     three quick items.

6          Would the Court be willing just to recommend

7     a facility close to the Washington, DC, area?

8          THE COURT:  Yes, I will do that.

9          ATTORNEY MCCARTHY:  Thank you, your Honor.

10         THE COURT:  So that he may be near his

11    family.

12         ATTORNEY MCCARTHY:  Exactly, your Honor.

13         Would the Court also be willing to recommend

14    that the BOP consider putting the brothers in the same

15    facility?

16         THE COURT:  What's the government's view of

17    that?

18         ATTORNEY TADDEI:  Given the nature of the

19    conduct in this case, we would object to that, your

20    Honor.

21         THE COURT:  I will leave it to the Bureau of

22    Prisons.

23         ATTORNEY MCCARTHY:  Very good, your Honor.

24         THE COURT:  They can do as they wish.

25         ATTORNEY MCCARTHY:  Finally --

1          THE COURT:  They are twins, but they are not

2     identical, are they?

3          ATTORNEY MCCARTHY:  They are.

4          THE COURT:  They are identical?

5          ATTORNEY MCCARTHY:  They are, your Honor.

6          THE COURT:  Your concern, Mr. Taddei, is

7     that together they would concoct more schemes.  Is that

8     your concern?

9          ATTORNEY TADDEI:  My concern, particularly

10    with respect to Muneeb, is his behavior in the jail

11    here, and if his brother is there, someone, you know,

12    obvious similar appearance could present certain

13    challenges to prison officials, in addition to

14    Mr. Akhter's conduct and his unwillingness to follow the

15    rules in the jail, plus all their activities that they

16    have conducted for which they are being sentenced today,

17    is that it's -- it's a security and safety risk to have

18    them in the same facility, your Honor.

19         THE COURT:  Typically, Mr. McCarthy, as you

20    know, the Bureau of Prisons doesn't put coconspirators

21    together.

22         ATTORNEY MCCARTHY:  I know.

23         THE COURT:  And I am going to leave it to

24    the Bureau of Prisons.

25         ATTORNEY MCCARTHY:  Very good.

1          Last quick item --

2          THE COURT:  Yes.

3          ATTORNEY MCCARTHY:  -- the Court revoked the

4   conditions of Mr. Akhter's release following the Malta

5   incident.  Would the Court be willing to grant --

6          THE COURT:  He will get credit for that

7   time.

8          ATTORNEY MCCARTHY:  Of course.

9          Would the Court be willing to grant him the

10  privilege of self-surrender, and allow him to go out on

11  his bond again until the BOP designates a facility?

12         THE COURT:  What's the government's position

13  on that?

14         ATTORNEY TADDEI:  We object to that, your

15  Honor, for the reasons that we have already been over

16  which relates to the obstruction of justice previously

17  and, in addition, you know, his ongoing conduct which I

18  just addressed.

19         THE COURT:  Mr. McCarthy, I am going to deny

20  that request.  That's a bridge that has been crossed and

21  cannot go back over.

22         ATTORNEY MCCARTHY:  No other issues.  Thank

23  you, your Honor.

24         THE COURT:  All right.

25         Good luck to you, Mr. Akhter.

```
 1                    THE DEFENDANT:  Thanks.

 2                    THE COURT:  And let me say again, you have a

 3      lot of life left open to you.  And you can look to your

 4      right, you have a supportive, strong family.  And as I

 5      read all of these letters, none of these other people

 6      ever have committed any crimes.  And you have special

 7      gifts.  You are a smart young man.  You have a great

 8      deal of potential.

 9                    And there is only one person who can decide

10      whether that potential is put to good use or to criminal

11      use and waste it.

12                    And who is that?

13                    THE DEFENDANT:  That is me.

14                    THE COURT:  That is you, Muneeb Akhter.

15                    Good luck to you, sir.

16                    ATTORNEY MCCARTHY:  Thank you, your Honor.

17                    THE COURT:  All right.  I will take a

18      five-minute recess and take up the case of his twin

19      brother.

20                    Court stands in recess.

21                    (Court adjourned at 2:15 p.m. in USA v

22      Muneeb Akhter.)

23

24                              ---

25
```

```
 1
 2                         CERTIFICATE
 3
 4           I, MICHAEL A. RODRIQUEZ, an Official Court
 5   Reporter for the United States District Court, in the
 6   Eastern District of Virginia, Alexandria Division, do
 7   hereby certify that I reported by machine shorthand, in
 8   my official capacity, the proceedings had upon the
 9   sentencing hearing in the case of UNITED STATES OF
10   AMERICA v. MUNEEB AKHTER.
11
12           I further certify that I was authorized and
13   did report by stenotype the proceedings in said
14   sentencing hearing, and that the foregoing pages,
15   numbered 1 to 79, inclusive, constitute the official
16   transcript of said proceedings as taken from my machine
17   shorthand notes.
18
19           IN WITNESS WHEREOF, I have hereto subscribed
20   my name this  20th   day of  February 20, 2017.
21
22
23                  _____/s/_____
24                      Michael A. Rodriquez, RPR/CM/RMR
25                         Official Court Reporter
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR